## BARTON v. FLANAGAN.
### No. 3369.

Court of Civil Appeals of Texas. Amarillo.
Feb. 26, 1930.
Rehearing Denied March 19, 1930.

W. M. Peticolas, Jr., of Lubbock, for appellant.

Vickers & Campbell, of Lubbock, for appellee.

RANDOLPH, J.

The parties will be styled as in the trial court.

The plaintiff, Flanagan, filed suit in the county court of Lubbock county, against defendant, Barton, to recover the sum of $421.50, the price of certain tools, etc., which he alleges he sold to the defendant. On trial before a jury, the court instructed a verdict for the plaintiff and on such verdict rendered judgment for the plaintiff. From this judgment the defendant has appealed.

948

The plaintiff's petition alleges his cause of action as follows: That on or about December 18, 1928, the plaintiff was the owner of the Lone Star Filling Station in the city of Lubbock, and on said date sold to the defendant his stock of tires, tools, jacks, grease gun, gasoline, oils, and accessories on hand, and used in connection wth the operation of said filling station, at and for an agreed price of $421.50, to be paid by the defendant to the plaintiff at Lubbock, Tex., on or before January 18, 1929, and to bear interest from said date at the rate of six per cent. per annum.

The defendant filed his answer, consisting of general and special exceptions, general denial, and a special plea setting up that the alleged contract sued on by the plaintiff was not the contract entered into between the plaintiff and defendant; that if the court should find that the contract is as alleged by the plaintiff then pleading payment thereof, and further that the contract entered into between the parties was an oral contract in which it was agreed that if the plaintiff would deliver the defendant his stock of goods described in plaintiff's petition and procure for the defendant a valid lease contract on said filling station, beginning on December 18th and ending on or about fourteen months from said date, at a monthly rental of $125 per month, the defendant would pay to the plaintiff $921—$500 for his procurement of said lease contract, and $421 for the stock of goods, to be paid on or before thirty days after date; that the transactions between the parties were one contract and the provisions for the procurement of the lease were mutually dependent one upon the other. That the defendant would not have purchased the stock of goods without first obtaining a valid lease contract, and he would not have purchased the lease contract without having purchased the stock of goods.

The defendant's answer then specifically sets out in detail the transactions between the parties, and alleged that the plaintiff represented that one T. E. May was authorized and had the power to give a valid lease contract to the defendant on the premises, and that said written contract tendered to the defendant was a valid subsisting lease and was a good lease to said filling station; that the defendant relied on said representations and accepted said lease and stock of goods, believing that said lease was, in fact, a valid lease as represented by the plaintiff, and that he relied on same and paid to plaintiff the cash payment of $500. That at the time the plaintiff made these representations, he knew they were untrue and knew that the lease in question was worthless, or, if he made them without knowledge of their falsity, they were made for the purpose of inducing the defendant to accept same and to part with his $500; further, the defendant pleads the fact that the contract was of no value whatever. That

shortly after said stock of goods was delivered to the defendant, he learned from the owner of said premises of the invalidity of said lease contract and was told by the owner that he would have to surrender the same to him, and, within two months after, defendant went into possession of said filling station.

Defendant prays that he have judgment against the plaintiff for $500, which said judgment shall be set off against any judgment that the plaintiff might recover against him, and for further relief, etc.

The plaintiff filed his supplemental petition in reply to defendant's answer, consisting of a general exception and general denial.

The defendant insists that the contract as pleaded by plaintiff was not the contract which he proved; that the allegata and probata did not correspond and for that reason the plaintiff should not have been allowed to recover.

■■ We concede the rule to be that the pleading and proof must correspond, and that proof offered in the trial of the case must be supported by proper pleading. The defendant having raised the question that the contract as pleaded by the plaintiff was not the contract actually entered into between the parties, and having pleaded the contract which he claims was entered into and the plaintiff having joined issue with such pleading by his general denial, the question presented to us is: Can the plaintiff not only rely on his own pleading, but is he also permitted to rely upon the pleading of such facts in issue by the defendant? We think he can.

Where a cause of action is defectively stated in the petition, such defect may be cured by allegations of defendant's answer. Grimes v. Hagood, 19 Tex. 246; Thomas v. Bonnie, 66 Tex. 635, 2 S. W. 724; Wright v. McCampbell, 75 Tex. 644, 13 S. W. 293; De Witt County v. Wischkemper, 95 Tex. 435, 67 S. W. 882; Arkansas Fertilizer Co. v. City National Bank, 104 Tex. 187, 135 S. W. 529; Pope v. Kansas City, etc., Ry. Co., 109 Tex. 311, 207 S. W. 514; Willis v. Lockett (Tex. Civ. App.) 26 S. W. 419; San Marcos Elec. Light & Power Co. v. Compton, 48 Tex. Civ. App. 586, 107 S. W. 1151; Cox v. Thompson (Tex. Civ. App.) 160 S. W. 604; Montgomery v. McCaskill (Tex. Civ. App.) 189 S. W. 797; Hranicky v. Sell (Tex. Civ. App.) 199 S. W. 315; Monk v. Crooker (Tex. Civ. App.) 207 S. W. 194.

The plaintiff having omitted to plead all the contract, and the allegations of the answer setting out the whole contract in detail, the judgment will not be disturbed because not fully pleaded in the plaintiff's petition.

■ Considering the question of the representations alleged to have been made by the plaintiff, and which the defendant claims were false and made with the purpose of inducing

him to act in purchasing the filling station, the evidence clearly establishes the fact that if such representations were made, that the defendant did not rely on them.

The defendant's testimony shows that he knew during the negotiations that the plaintiff did not have a lease on the premises which he was selling to the defendant; he also knew that the plaintiff was renting from "month to month," yet he testifies that one of the propositions which plaintiff made him was that defendant would pay him $600 for eighteen months of the remaining term of the lease. The owner of the service station was one Gelin, who had taken the title subject to a lease from John Gelin to the Lubbock Oil & Gas Co. (W. K. Dickinson). At the time said Gelin acquired the property from John Gelin, he knew of the existence of a sublease from the oil and gas company to T. E. May.

The defendant charges that he told the plaintiff that he wanted a good lease contract for the unexpired term and that the plaintiff promised that he would give him a good lease. Pretermitting any discussion of the question of whether or not the representation so charged to have been made was actionable, it appears from the statements by the defendant that he did not rely on such representations. As stated above, the sublease was held by May. The plaintiff and defendant called on May and Dickinson, who was, it appears from the record, the Lubbock Oil & Gas Co., and each of these parties assured them that they thought it was a good lease. That they then called on Mr. Ratliff, an attorney at law, and he told them he thought the lease was a good one. At the solicitation of the plaintiff, Ratliff drew up a contract from May to the defendant for the lease of the filling station for the unexpired term of the lease and under the conditions of the lease from John Gelin to the Lubbock Oil & Gas Co. From the whole of defendant's testimony, it appears, as stated, that he did not rely on the plaintiff's statements that it was a good contract, but went further·in his investigation as to whether it was or not, and was guided largely by what other parties said about it in his purchase.

█ It does not appear from the defendant's pleading upon what ground he concluded that the lease he had received from May was invalid. He was notified by the owner that it was invalid and this notification was accompanied by demand that he surrender the premises. However, it appears that the lease from the owner did not provide for the subleasing of the premises as required by article 5237, R. C. S., which provides that the tenant cannot lease the premises during the term of the lease to any other person without first obtaining the consent of the landlord. It is true that Gelin testified that he never consented to the sublease, but it is also true that he knew that May was a sublessee and that Flanagan was also a sublessee and that the defendant was holding under a sublease, and with this knowledge he continued to receive and accept the $125 per month rental during the year 1928, and part of 1929.

By this conduct, Gelin waived his right to terminate the sublease. 36 C. J. 603; 13 C. J. 1079; Jackson v. Knight (Tex. Civ. App.) 194 S. W. 844, 846; Gulf, C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 15 S. W. 228.

These propositions being correct, the trial court did not err in instructing the jury to find for the plaintiff, and we therefore affirm the judgment of the trial court.