## TEXAS ELECTRIC SERVICE CO. v. CLARK.

### No. 950.

Court of Civil Appeals of Texas. Eastland.

Feb. 26, 1932.

Rehearing Denied March 25, 1932.

Scott, Brelsford, McCarty & Brelsford, of Eastland, for appellant.

Frank Judkins and Merritt F. Hines, both of Eastland, for appellee.

LESLIE, J.

By this suit Mrs. A. L. Clark, plaintiff, sought to compel the defendant, Texas Electric Service Company, a corporation, to convey to her fifteen shares of preferred stock in that company, and, in the alternative, sought a judgment for $1,517, with interest, alleged to have been paid by her to the company for said stock. The defendant answered by general demurrer, special exceptions, general denial, and a special plea to the effect that, on receiving her check, it deposited it in the First State Bank at Eastland, and the check was by that and other intermediate banks transmitted in the usual and ordinary course of business to the drawee bank, which, instead of paying cash thereon, issued therefor its sight draft on the Stockyards National Bank of Fort Worth, that such draft was not paid by the Stockyards National Bank, due to the intervening insolvency of the Carbon bank, and that the defendant was not responsible for such loss, but that the same fell upon the plaintiff. The trial was before the court without a jury, and the plaintiff was awarded a judgment for the title and possession of the stock, and the judgment further decreed that, in the event the defendant was unable or unwilling to deliver the stock to the plaintiff within thirty days from the date thereof, in lieu thereof, the plaintiff should have and recover of and from the defendant the sum of $1,517, with interest, together with costs, etc. From this judgment the defendant appeals, and the parties will be referred to as in the trial court.

The first proposition is to the effect that the court erred in overruling its special exception to the plaintiff's pleading wherein she seeks specific performance of an alleged contract to convey the stock in the corporation. The point is that there was available to her an adequate remedy at law for damages. This exception should have been sustained. It does not appear that the shares of stock may not have been readily obtainable in the open market. The stock is not shown to have any unique value or characteristics, nor that damage in lieu thereof would be inadequate. Webb v. Durrett (Tex. Civ. App.) 136 S. W. 1189; Pomeroy's Equity Jurisprudence (4th Ed.) § 2174.

However, the error was harmless. The judgment as entered operates to the distinct advantage of the defendant, in that it is optional with it whether it deliver the stock or respond in damages.

Consideration will now be given to propositions 2, 3, 4, 5, 11, 12, and 13, which are deemed controlling. The determination of these propositions renders the remaining ones immaterial. The seven propositions referred to challenge the correctness of the trial court's judgment in holding, in effect, that the check given by Mrs. Clark to the electric company was paid to the latter.

Except as indicated by the first proposition, no question arises on the pleadings which very fully and explicitly set out the transaction between the litigants. The plaintiff was endeavoring to purchase the shares of stock in the electric company and that company was endeavoring to sell the same to her for the amount represented by the check. Pursuant to such negotiations, and in payment for said stock, the plaintiff executed and delivered to the electric company her personal check for $1,517 on the First State Bank of Carbon, Tex. The check was delivered to the defendant's agent at Eastland on September 9, 1930, too late for deposit in the bank at Eastland for collection on that date. The towns of Eastland and Carbon are ten miles apart, and the check was deposited by the defendant in the Texas State Bank of Eastland at Eastland on the following day, September 10th. The Eastland bank, having no banking relations with the Carbon bank, and not being a member of the Federal Reserve System, sent Mrs. Clark's check to its correspondent at Fort Worth, Tex., to wit, the Fort Worth National Bank. That bank sent the same to the Federal Reserve Bank at Dallas, and, there being but one bank in the town of Carbon, to wit, the First State Bank, on which the check was drawn, the Federal Reserve Bank sent said check direct to the Carbon bank, which remitted for said check by its draft on the Stockyards National Bank at Fort Worth, Tex. This

draft being presented to the Stockyards National Bank for payment, payment thereof was refused, for the reason that, in the meantime, the First State Bank of Carbon had been closed by reason of insolvency by the commissioner of banking of the state of Texas. Payment of the draft was stopped.

At the time Mrs. Clark executed and delivered the check to the defendant, and at the time the same reached the Carbon bank through the channels indicated, she had on deposit with that bank more than sufficient funds to pay the same. Upon presentment of the check to the Carbon bank, it was stamped "paid," charged against Mrs. Clark's account, and returned to her by the Carbon bank as other canceled checks. Further, at the time the Carbon bank issued its sight draft on the Stockyards National Bank for the check, it had sufficient funds on deposit with that bank to pay the draft.

■ Under the facts stated, it must be borne in mind that the Texas Electric Service Company, in depositing the check with the Texas State Bank of Eastland, did so with the knowledge that such initial bank would not collect it through its personal agents and employees, but that it would send the check to a distant point or correspondent banks and effect a collection of it through them. The electric company, by the selection of the Eastland bank as its agent for collection of the check, intrusted to that bank the selection of other and proper agents for the consummation of the transaction. Tillman County Bank v. Dell Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302; Waggoner Bank & Trust Co. v. Garner, 113 Tex. 5, 213 S. W. 927, 6 A. L. R. 613.

Hence the Fort Worth National Bank and the Federal Reserve Bank in fact and in law became the agents of the electric company for the collection of the check. With such arrangement the drawer of the check had nothing to do, and was not concerned under the facts of this case. Competent agents appear to have been selected, and the check forwarded and presented in due and customary time. As agent of the electric company, the Federal Reserve Bank presented the check to the drawee for payment. It was an order to pay cash. The drawer's funds were ample to meet the same, but, instead of payment in currency, the drawee gave in satisfaction thereof its sight draft which the Reserve Bank was unable to collect for the reasons stated.

■ Under the facts disclosed by the record, and in substance stated above, this court is of opinion that the plaintiff's check was in fact paid to the defendant or its duly authorized agent, the Federal Reserve Bank, which in effect would be the same. That such facts constitute payment of a check is supported by many sound authorities, some of which are:

Friends in Need Soc. v. Peterson (Tex. Civ. App.) 9 S.W.(2d) 1110 (writ refused); City of El Paso v. Ins. Co. (Tex. Civ. App.) 278 S. W. 231 (writ refused); Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; Douglas v. Federal Reserve Bank, 271 U. S. 489, 46 S. Ct. 554, 70 L. Ed. 1051; O'Leary v. Abeles, 68 Ark. 259, 57 S. W. 791, 82 Am. St. Rep. 291; Winchester Milling Co. v. Bank, 120 Tenn. 225, 111 S. W. 248, 18 L. R. A. (N. S.) 441; Pollak Bros. v. Niall-Herin Co., 137 Ga. 23, 72 S. E. 415, 35 L. R. A. (N. S.) 13; American Nat. Bank v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310; Jensen v. Laurel Meat Co., 71 Mont. 582, 230 P. 1081.

The rule being applied in this case is clearly stated in 3 R. C. L. p. 641, § 240, as follows: "And if the holder of the check delivers it for collection to the drawee, who, upon its receipt, having money on deposit to the credit of the drawer, indorses the check 'paid', and afterward delivers it to the drawer, the check is deemed paid as between the holder and the drawer, even if the collecting bank, instead of receiving cash, takes exchange which turns out to be worthless."

Under this rule the election by the Federal Reserve Bank to accept the Carbon bank's draft in lieu of currency involved a risk on the part of the payee and not the drawer; said Reserve Bank being the agent of the former. A check on a bank calls for money, and, if the money is not demanded when it is presented to the drawee, it is evident that some other mode of payment or course of dealing is more convenient to the payee, or because it is more advantageous to the drawee bank that money should not be paid. If the payee, in person or through its agent, accepts for his own convenience something besides money for the check, he should not be allowed to charge the drawer with losses resulting from such election. In other words, a check on a bank means money on presentment, and, if the bank is open and has on deposit ample funds of the drawer to pay the same, and the money is not realized on the check, it must be because of some new arrangement between the payee and the bank, which cannot and should not be regarded as a part of the drawer's business. In such a case the drawer should not be responsible for the success or failure of this new arrangement entered into without his knowledge or consent. Such is believed to be the relation which Mrs. Clark, the plaintiff in this case, bears to the arrangement which undertook to substitute the Carbon bank's draft for the money she directed to the liquidation of her check.

It therefore occurs to us that, both upon authority and reason, it should be held that the plaintiff's check was paid to the defendant, since it was evidently paid to its duly authorized agent. The above series of propositions are therefore overruled.

The defendant in its brief presents that the Federal Reserve Bank, in exercising the functions of a clearing house for the collection of checks on banks, operates under certain rules and regulations prescribed by the Federal Reserve Board. Subdivision 3, § 2, of Regulation J of said Board provides that a Federal Reserve Bank may, in its discretion and at its option, accept in payment for checks, or in remittance therefor, cash, bank drafts, transfers, etc., or other forms of payment acceptable to the Federal Reserve Bank, and in doing so be free from liability in the event of a failure to realize on such drafts, etc. Such is, no doubt, the rule under which the Reserve Bank operates. If upon the authority of that rule the draft of the Carbon bank was accepted instead of cash in the instant case, that would have no bearing upon the legal rights of Mrs. Clark. As noted, the Federal Reserve Bank was the agent of the electric company, and became its agent for the collection of the check, and undertook to do so under the very liberal rule stated. That rule might have a very important bearing on the right of the electric company to recover the amount of the check from its agent, the Federal Reserve Bank, a question we are not called upon to decide, since the Federal Reserve Bank is not a party to this suit.

For the reasons assigned, the judgment of the trial court is affirmed.