## CITIZENS' NAT. BANK OF ABILENE v. OVERSTREET.

### No. 1340.

Court of Civil Appeals of Texas. Eastland.

Nov. 23, 1934.

Rehearing Denied Dec. 21, 1934.

See, also, 46 S.W.(2d) 409.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellant.

Alexander & Bird, of Fort Worth, for appellee.

HICKMAN, Chief Justice.

The appeal is from a judgment in favor of appellee, J. R. Overstreet, against appellant, Citizens' National Bank of Abilene, for damages sustained on account of appellant's negligence in handling a collection item. Appellee is the Texas distributor of Hupmobiles, and, on the date of the transaction out of which this suit grew, Charles W. Danford, trading under the name of Abilene Motor Company, was the local distributor of these

cars in the city of Abilene. Appellee sold to Danford three Hupmobiles at an agreed cash price of $3,953.50. He then ordered the cars from Hup Motor Car Corporation at Detroit, instructing it to ship them directly to Abilene, and draw draft on him for the factory price, with shipper's order bill of lading attached. The manufacturer shipped the cars as directed, drawing on appellee through the First National Bank of Fort Worth. Upon arrival of the draft in Fort Worth, appellee paid same and received the bill of lading. Prior to this time, Danford had made arrangement with the Commercial Investment Trust Corporation, referred to in the record as C. I. T., to finance his purchase of cars from appellee, and had been extended a line of credit up to $5,000 by C. I. T., under an arrangement by which he would pay 15 per cent. of the price charged him by appellee and the C. I. T. would pay appellee the other 85 per cent. of such cost price upon the delivery by appellee to it of the customary time drafts and trust receipts, which said time drafts were to be accepted by Danford and the trust receipts executed by him, there being one time draft and one trust receipt covering each automobile sold. These time drafts and trust receipts, properly executed, were, in the hands of appellee, Overstreet, equivalent to cash to the extent of the face amount thereof, less a 4 per cent. handling charge added thereto as the agreed compensation Danford was paying the C. I. T. for financing him, for, under the arrangements between the parties, the C. I. T. was bound to pay this amount of money to Overstreet without any further liability on his part.

The transaction upon which this suit is based was to be financed through the C. I. T. under this plan. Accordingly, upon receipt of the bill of lading, Overstreet drew a demand draft on Danford for 15 per cent. of the price at which he agreed to sell these cars to Danford and attached thereto the bill of lading, together with three time drafts and three trust receipts, each time draft evidencing 85 per cent., plus the 4 per cent. handling charge, of the agreed price of one of the cars. All of these papers, the demand draft, bill of lading, three time drafts, and three trust receipts, were then deposited by Overstreet in the First National Bank of Fort Worth, for handling, which bank in turn forwarded them to the appellant bank. Upon receipt thereof and upon payment by Danford of the demand draft, appellant bank turned over all of these papers to Danford, who presented the bill of lading to the railroad company and obtained the possession of the cars. Danford imme-

diately thereafter sold these cars for cash and appropriated the proceeds of the sales to his own use. Within a few days thereafter, he went out of business, being at that time insolvent. The appellant bank remitted the proceeds of the demand draft for 15 per cent. of the purchase price of these cars to the Fort Worth bank, which in turn deposited it to the account of Overstreet. Inquiry was immediately made as to the whereabouts of the time drafts and trust receipts, and denial was made by the appellant bank that any of these instruments were attached to the demand draft, or received by it. This suit followed.

The case was submitted by the court to a jury upon special issues, by their answers to which they made the following findings of fact: (1) When the appellant bank received the bill of lading and demand draft, the three time drafts and trust receipts were with such instruments; (2) the employees of appellant bank delivered the three trust receipts and time drafts to Danford with the bill of lading; (3) their act in so doing was negligence; (4) which was the proximate cause of appellee's losing his interest in the amount of the three time drafts. Other issues, hereinafter to be noticed, were submitted to the jury, but no answers returned thereto. By agreement, the amount of damages, if any, was left to the court, and no issue was submitted on that question. Upon the verdict of the jury, together with the court's finding as to the amount of damages, judgment was rendered in favor of appellee against appellant for $3,972.42, from which judgment this appeal is prosecuted.

The first question presented is that the court erred in rendering judgment on the verdict, but should have declared a mistrial on account of the failure of the jury to answer certain special issues. In addition to the four special issues above mentioned, pertaining to the negligence of the appellant, the court, in his charge, submitted two defensive issues as follows:

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that the failure of the employees of the First National Bank of Fort Worth, Texas, to send instructions with the Demand Draft and Bill of Lading, to have the Time Drafts and Trust Receipts executed by the Abilene Motor Company or Danford and returned with the proceeds of the Demand Draft, was negligence on the part of the employees of the Fort Worth Bank? Answer Yes or No.

"If you have answered Special Issue No. 5 in the affirmative or Yes, then you will answer Special Issue No. 6; otherwise, you need not answer Special Issue No. 6.

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that the negligence, if any, of the employees of the Fort Worth Bank, in failing to send instructions to the Citizens National Bank of Abilene to have the Time Drafts and Trust Receipts executed and returned, was a contributing cause of the Time Drafts and Trust Receipts being delivered to Danford? Answer Yes or No."

The jury was unable to answer these issues, and it is contended that, on account thereof, a mistrial should have been ordered. The judgment recites that these unanswered issues were immaterial, and that, no matter how answered, would not have affected the judgment to be rendered. The court, therefore, rendered judgment as though said issues had not been submitted.

If these issues were immaterial, the failure of the jury to return answers thereto would not preclude the court from rendering judgment on the verdict, if the remainder thereof afforded findings sufficient to sustain a judgment. Brokaw v. Collett (Tex. Com. App.) 1 S.W.(2d) 1090; Magnolia Pet. Co. v. Connellee (Tex. Com. App.) 11 S.W. (2d) 158; Coons v. Lain (Tex. Civ. App.) 168 S. W. 981; Silvers v. Payne (Tex. Civ. App.) 282 S. W. 876; Brown v. Dallas Gas Co. (Tex. Civ. App.) 42 S.W.(2d) 869.

Were issues Nos. 5 and 6 material? If they were, answers thereto favorable to appellant would have relieved it of liability to appellee notwithstanding its own negligence. Appellant, in its answer, pleaded, as a defense, the contributory negligence of appellee, as well as that of the Fort Worth bank, but no issues were submitted, and none requested, on the negligence of appellee himself, and that defense was thereby waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. The question, therefore, is: Would a finding that the Fort Worth bank was negligent, and that its negligence was a contributing cause of the time drafts and trust receipts being delivered to Danford, relieve appellant of liability for damages suffered as a proximate cause of its negligence?

Since the decisions by our Supreme Court in the cases of Tillman County Bank v. Behringer, 113 Tex. 415, 257 S. W. 206, 36 A. L. R. 1302, and Garver v. Howard, 113 Tex. 371, 257 S, W. 209, it has been the estab-lished law in this state that appellant bank was appellee's agent in the transaction, and, as such, was responsible directly to him for any breach of duty. Texas Electric Service Co. v. Clark (Tex. Civ. App.) 47 S.W.(2d) 483. The duty owing by appellant was to appellee, and not to the forwarding bank. Liability rests upon a negligent breach of that duty. The exact question here under consideration was presented in Mercantile Bank & Trust Co. v. Schuhart, 115 Tex. 114, 277 S. W. 621, 624. In that case both the forwarding bank and the correspondent bank were guilty of negligence, and it was held that "there is then a situation presented where loss was caused and the delinquency of either or both of two parties was an efficient cause. Suit against either or both of them to redress the loss could be maintained." This holding is in accord with the well-established rule that, where the negligent acts of two or more persons concur in producing a single indivisible injury, such persons are jointly and severally liable. Baylor Univ. v. Bradshaw (Tex. Civ. App.) 52 S.W. (2d) 1094; Houser v. Harris (Tex. Civ. App.) 44 S.W.(2d) 784; McBeath v. Campbell (Tex. Com. App.) 12 S.W.(2d) 118; Patten v. Hill County (Tex. Civ. App.) 297 S. W. 918. Appellant's acts, separately considered, were found by the jury to be negligent, and the proximate cause of appellee's damages, and a finding that the Fort Worth bank was also negligent would have afforded no defense to its liability. Evidence of the failure of the Fort Worth bank to accompany the draft with a letter of instructions had a direct bearing on the question of the negligence of the appellant bank, but, since the jury has determined, upon abundant evidence, that appellant was negligent, notwithstanding the failure of the Fort Worth bank to send a letter of instructions, it cannot escape liability on the ground of the absence of such instructions.

There is another reason why issues Nos. 5 and 6 should not have been submitted to the jury. Each of the employees of the appellant bank who handled the transaction testified in the case. The real disputed issue of fact was whether the time drafts and trust receipts accompanied the demand draft, and these witnesses testified positively that the only papers sent the bank were the demand draft and bill of lading. They each testified that they had handled a number of items of this nature before, and that, had these time drafts and trust receipts been attached to the demand draft, they would have known what

to do with them. One of these witnesses gave this testimony:

"Q. And you had handled a number of items where time drafts and trust receipts were involved, had you not? A. Yes.

"Q. If they had been attached to this item you would have known what to do with them? A. Yes, after the first one.

"Q. In other words, you would have known to have Mr. Danford accept the time drafts and sign the trust receipts wouldn't you? A. Yes.

"Q. Just one other question. Prior to this particular item in 1928 you also handled some four or five transactions from Mr. Overstreet to Mr. Danford, didn't you? A. Yes, I believe so."

The other employee gave this testimony:

"Q. If the time drafts and trust receipts had been attached you would have known what to have done with them? A. Yes, sir.

"Q. You would have known to have Mr. Danford accept the time drafts and sign the trust receipts, wouldn't you? A. Yes, sir.

"Q. And you would have returned it to Fort Worth, all the papers, including the remittance? A. Yes, sir.

"Q. You knew that didn't you? A. Yes, sir."

From this testimony it is conclusively established that the failure of the Fort Worth bank to instruct the appellant bank to have Danford accept the time drafts and execute the trust receipts was not a proximate cause of appellee's loss. Instructions, under the circumstances, would have served no purpose.

For the reasons above assigned, we conclude that the trial court did not err in rendering judgment on the verdict of the jury notwithstanding its failure to answer issues Nos. 5 and 6.

■■ It is next presented that appellant's request for a peremptory instruction should have been granted for three reasons: (1) No legal measure of damages was proved authorizing a recovery in appellee's favor; (2) the damages, if any, sustained by appellee were special damages, and there was neither pleading nor proof that appellant had any notice of such special damages; and (3) the evidence having disclosed that appellee trusted Danford with the cars and authorized him to sell same, and that same were sold before the trust receipts, had they been executed, could have reached Fort Worth and the lien fixed on the cars in favor of C. I. T., appellant

could not have been injured by the delivery of the trust receipts to Danford. It is not clear from the record just what rule was employed by the trial court in measuring the damages. The judgment was for $3,972.42. The reasonable market value of the three cars was established at $3,953.50. The amount of the demand draft which was paid by Danford was $911.85. Deducting this amount from the market value of the cars and then adding 6 per cent. interest from September 29, 1928, the date the papers were delivered to Danford, the result is the amount of the judgment. That same amount is arrived at by deducting from the face value of the time drafts the 4 per cent. handling charge included therein, and then adding 6 per cent. thereto from September 29, 1928. We are, therefore, not certain which method of calculation was employed. We can perceive no reason why a correct rule for measuring the damages would not be the value of the automobiles at the time and place of the delivery of the bill of lading to Danford, less the amount of the demand draft, plus 6 per cent. interest on the balance. People's Nat. Bank v. Brogden & Bryan, 98 Tex. 360, 83 S. W. 1098; Buckholts St. Bank v. Graf (Tex. Civ. App.) 200 S. W. 858. Appellee had the right to impose any conditions which he desired upon the authority of appellant to deliver the bill of lading to Danford, and the delivery thereof, in disregard of the conditions imposed, was a breach of duty owing to appellee. The fact that the trust receipts acknowledged title to the cars in C. I. T. instead of appellee is not material, for appellee suffered loss to the same extent as if these receipts had recognized title in him. Appellant could well foresee that whoever owned the cars would suffer loss by its unauthorized delivery of them to Danford, and the fact that it may not have known just who was the real owner is unimportant. If the trial court adopted this view, the amount of the judgment is correct.

■ On the other hand, we believe the amount of the judgment is as certainly correct if viewed from the standpoint of the value of the demand drafts and trust receipts, had they been properly accepted and executed. There is evidence in the record which would support the conclusion that Danford would have converted the proceeds of the sales of these cars, even had he executed these instruments, but the evidence is in no wise conclusive that he would have done so. It cannot be concluded that these instruments were valueless merely because Danford was insolvent, and because the trust re-

ceipts were, in legal effect, chattel mortgages upon merchandise daily exposed for sale in the open market. These trust receipts acknowledged title to the several automobiles in C. I. T., and obligated Danford to hold the proceeds derived from the sale thereof in trust for it. The presumption is that Danford, although insolvent, would not have incriminated himself by embezzling these funds, had he executed these trust receipts. If he would not have done so, the time drafts were, in fact, worth their face value to C. I. T., and their face value less 4 per cent. to appellee, the drawer thereof. We cannot hold, as a matter of law, that the only value possessed by them was that afforded by a separate contract between appellee and C. I. T., of which appellant had no notice.

■■■■■ But, even if these time drafts would have been valueless in the hands of C. I. T., damages suffered by appellee would, nevertheless, have been general damages and not special damages. General damages result naturally and necessarily from the acts complained of, while special damages result naturally, but not necessarily, therefrom. West Texas Utilities Co. v. Nunnally (Tex. Civ. App.) 10 S.W.(2d) 391. Stated differently, the term "general damages" is applied to loss which is conclusively presumed to have been foreseen or contemplated, while the term "special damages" is applied to loss not deemed, as a matter of law, to have been foreseen, but shown, as a matter of fact, to have been foreseen. Texas & N. O. Ry. Co. v. Bigham (Tex. Civ. App.) 67 S. W. 522. It will be conclusively presumed that appellant foresaw, or anticipated, that its act in failing to have Danford accept the time drafts and execute the trust receipts would result in the loss to appellee of the value they would have had when properly accepted and executed. Prima facie, the value of these time drafts was the sum of the face amounts thereof. Collin County Nat. Bank v. Turner (Tex. Civ. App.) 167 S. W. 165; 7 C. J. 624. Appellant offered evidence to show that they had a less value than that presumed. On the issue of value thus raised, appellee had the right to meet appellant's contention by showing that the value was in fact what it was presumed to be. No evidence was offered showing that the value, because of the existence of a collateral contract, was greater than appellant could foresee it to be, but the evidence merely established that the value was, in fact, approximately the same as that presumed and, therefore, foreseen. Appellant is charged in law with having foreseen

that the value of these time drafts might be the face amount thereof. The assignments complain of the refusal of the trial court to give a peremptory instruction. Under no view would such instruction have been authorized, for appellant at all events knew that the instruments had some value, and the court did not err in this regard.

■■■■ The next question arises in this manner: On September 29, 1928, about the day the papers were received by appellant bank, appellee, Overstreet, wrote the following letter to Danford:

"We are drawing on you today with C. I. T. papers attached for the load of cars about to reach you. Inasmuch as you have the two coupes sold and will doubtless deliver them in a day or two we will be glad to hold the papers here as an accommodation to you for a few days, if you wish, and you can then remit us the net amounts, $1205.64 and $939.42, respectively. Please advise if you wish us to do this."

It is contended that by this letter Danford was authorized to sell two of the cars and remit directly to appellee before any lien was fixed upon them in favor of C. I. T., and that, it having been conclusively shown that two of the cars were sold and the proceeds converted by Danford before any lien was fixed on them, the judgment was excessive as to the amount represented by the time drafts on these two cars. We cannot sustain this contention. The letter was an offer made for Danford's benefit to novate the contract. No reply was made thereto and the offer was not accepted. The letter contemplated that this favor would be extended upon the condition that the papers were properly executed by Danford. It cannot be construed as authorizing Danford to sell the cars without signing the trust receipts and accepting the time drafts. It was merely a suggestion that Danford could effect a 4 per cent. saving by remitting to appellee after executing these time drafts and trust receipts, and before appellee had delivered same to C. I. T. Nothing was done about it whatever, and we can attach no legal significance to this letter.

This record bears unmistakable evidence that this case has been carefully tried, both by the counsel for the respective parties and the trial judge. Only questions of substantive law are presented, and it is our view that each of these questions was correctly determined below. The judgment of the trial court will, therefore, be affirmed.