**IOWA MFG. CO. v. BALDWIN et al.**
No. 1420.

Court of Civil Appeals of Texas. Eastland.
April 19, 1935.

Rehearing Denied May 24, 1935.

J. Hart Willis, of Houston, Thompson, Knight, Baker & Harris, of Dallas, B. P. Davenport, of Stamford, and Thomas & Thomas, of Anson, for appellant.

Stinson, Hair, Brooks & Duke, of Abilene, H. F. Grindstaff, of Aspermont, and Tom Davis, of Haskell, for appellees.

HICKMAN, Chief Justice.

This suit was instituted by appellant, Iowa Manufacturing Company, against M. A. Baldwin and W. P. Caudle, alleged to be the surviving members of the firm of Baldwin & Baldwin, a partnership originally composed of J. H. Baldwin, M. A. Baldwin, and W. P. Caudle. J. H. Baldwin died prior to the institution of the suit. Appellant's petition contained two separate and distinct counts. In the first count it was alleged that appellant sold to the partnership of Baldwin & Baldwin certain rock-crushing machinery under a written contract, designated as a conditional sales contract, by the terms of which title to the rock crushers and other equipment was retained by the appellant. There was a provision in this contract to the effect that, in the event the buyers made default in payment of interest or principal on certain notes executed as a part of the purchase price, the appellant had the right immediately to take possession thereof with or without process of law, and retain the same and any and all payments previously made by the buyers. In this count the prayer was for judgment vesting title to all the property sold in appellant, and awarding it the possession thereof. In the second count the petition declared upon certain unpaid purchase-money notes, and, treating the so-called conditional sales contract as a chattel mortgage, sought judgment upon these notes and for a foreclosure of the mortgage lien upon the property. At the conclusion of the trial, the jury was instructed peremptorily to return a verdict in favor of the appellant, as prayed for in the first count, for the title and possession of the rock crushers and equipment described in its petition. Judgment was entered on the verdict thus returned decreeing the title to the property in appellant, divesting same out of appellees, and awarding writ of restitution and writ of possession. The appellant's petition having expressly declared upon the notes and for a foreclosure as an alternative ground, electing to regain the property and retain the amount theretofore paid thereon, the effect thereof was to surrender for cancellation the unpaid notes, in the event the relief sought in the first count was obtained. There was no express prayer for the cancellation of the notes, but the judgment decreed their cancellation. It may be that the judgment is an unusual one, for the instrument is, in effect, a chattel mortgage, but it is in exact accordance with appellant's pleading, and neither party is complaining thereof. It is suggested by appellant, without express assignment, that the unpaid notes should not have been canceled. Clearly, the order of cancellation followed as a matter of course from the relief actually sought and obtained under count 1, and we shall not further discuss the judgment in appellant's favor against the appellee.

The many questions presented here for review relate to the judgment of the appellees against the appellant on their cross-action for special damages. Stuckey Construction Company, hereinafter sometimes called Stuckey, was awarded a contract by the state highway commission for the construction of a section of road in Haskell county, and the partnership of Baldwin & Baldwin entered into a contract with the construction company to furnish it 42,000 tons of crushed rock to be used in the construction of this highway, at 75 cents per ton f. o. b. cars at Baldwin Switch, Stonewall county. Afterward, appellant sold the rock crushers and equipment to the Baldwins for the purpose of enabling them to perform their contract. The evidence is conclusive that appellant knew the terms of the contract between the Baldwins and Stuckey, and that it sold the rock-crushing outfit to the Baldwins for the known purpose of enabling them to perform same. About this there can be no question. The sales contract was on a printed form employed by the appellant, but there was written into it by pen and ink the following express warranty: "The above crushers to produce 600 tons per day of 2½ inch limestone rock if properly fed." The cross-action was for special damages alleged to have been sustained by the Baldwins on account of the failure and inability of the crushers to produce the amount of crushed rock which they were warranted to produce. The court, in its charge to the jury, after giving the peremptory instruction in favor of the appellant above noted, defined certain terms, gave the jury certain admonitory charges, and then submitted two special issues, which, with the answers, were as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the

rock crushers in question were incapable of crushing 600 tons of 2½ inch limestone rock in ten hours when properly fed? Answer: 'It was incapable of crushing 600 tons', or 'It would crush 600 tons.'

"Answer: It was incapable of crushing 600 tons.

"If you have answered the next preceding special issue 'It would crush 600 tons' you need not answer the next following special issue, but if you have answered it 'It was incapable of crushing 600 tons', then you will answer:

"Special issue No. 2: What amount of damages, if any, do you find from a preponderance of the evidence the defendants have suffered by reason of the inability of the rock crushers to crush 600 tons of 2½ inch limestone rock in ten hours per day? Answer: Nine thousand six hundred thirty five ($9,635.00) Dollars.

"In answering the next preceding special issue you will consider only the net profits lost by the defendants, if any, resulting from the inability of the rock crushers to crush 600 tons of 2½ inch limestone rock per day, when properly fed, which loss of profit, if any, was within the contemplation of plaintiff and defendants at the time of the making of the sale contract as would result from the failure of said crushers to crush said amount of such rock in ten hours."

Upon the verdict judgment was rendered in favor of M. A. Baldwin and W. P. Caudle, as surviving members of the partnership of Baldwin & Baldwin, against the appellant for $9,635, and it is from this portion of the judgment that appellant has prosecuted this appeal.

The case is briefed under eighteen propositions, but when properly grouped they present a fewer number of law questions. A number of propositions are based upon assignments complaining of rulings of the trial court upon exceptions to appellees' pleadings in their cross-action. One of the assignments complains of the overruling of a general demurrer, and others complain of rulings upon special exceptions, which, in effect, were general demurrers. The different exceptions present different phases of the general question of whether the petition was sufficient as a basis for the recovery of special damages, and the related question of whether sufficient facts were alleged to afford a means for measuring the damages. No allegations were contained warranting the recovery of general damages. The entire theory of recovery upon the cross-action was one for special damages, and the petition has been critically examined to determine whether it contains the essential allegations to support such an action. Our conclusion is that it is sufficient as against the objections lodged thereto. It is very long, but may be epitomized as follows:

It alleged the contract between the Baldwins and Stuckey, under the terms of which the former were to furnish to the latter 42,000 tons of crushed limestone rock at 75 cents per ton f. o. b. cars at Baldwin Switch; that on the same date said contract was executed plaintiff, through its agent and representative, Chas. F. Meffley, approached J. H. Baldwin, now deceased, a former member of the partnership, for the purpose of selling to the partnership rock crushers "for the purpose of crushing and producing said 42,000 tons of crushed rock for said construction company"; that, well knowing the terms and conditions of their contract with Stuckey, the plaintiff's representative presented defendants a written contract, partly on a printed form, for the sale to the defendants of the said rock crushers; that at that time the defendants furnished to the plaintiff a copy of their contract with Stuckey; that the plaintiff did not agree to sell these crushers to the defendants until Stuckey had agreed to accept a written assignment executed by defendants to Stuckey authorizing him to pay a certain percentage of the purchase price for the crushed rock to the plaintiff; that the sales contract was executed after the assignment from the defendants to Stuckey had been executed and delivered; that thereafter Stuckey sold his Haskell county contract to L. E. Whitham Construction Company, hereinafter sometimes called Whitham, which latter company agreed in writing to assume and carry out the contract of the defendants with Stuckey, and agreed to accept and pay for all the balance of the crushed rock not already delivered under the contract with Stuckey; that after Whitham assumed the Stuckey contract, the defendants, at the request of the plaintiff, entered into a written contract with his company, which was merely a supplemental contract "to carry out the original Stuckey contract with these defendants"; that the plaintiff joined in this contract, and accepted the terms and conditions thereof; that under the terms of the contract with Whitham, plaintiff

was to receive a certain percentage of the proceeds of the sale of this rock, and did, in fact, receive part of such proceeds; that the plaintiff had knowledge that the Whitham contract was substituted for the Stuckey contract. Attached to the petition was a copy of the so-called supplemental contract between the defendants and Whitham. Under this contract defendants were to furnish 37,000 tons of crushed rock, less 150 cars which were to be furnished by More & Moore, Inc., at the same price provided in the Stuckey contract. The defendants released both the Whitham Company and the Stuckey Company from all claims and obligations arising from, or in connection with, the contract which they had with the Stuckey Company. The contract further provided that payments were to be made by checks drawn in favor of Baldwin & Baldwin and Iowa Manufacturing Company, jointly. Attached to this contract was a memorandum of agreement between appellant and Whitham reciting, among other things, that the latter had taken over, as a subcontractor from Stuckey, the construction of a certain highway in Haskell county, and assumed the written contract between the Baldwins and Stuckey for furnishing the stone. By this agreement the appellant released both Whitham and Stuckey from any and all obligations arising from or connected with the assignment executed by Baldwin & Baldwin to Stuckey authorizing the latter to pay a certain percentage of the proceeds of sale to the appellant. The consent of Baldwin & Baldwin was indorsed at the foot of this memorandum of agreement.

The petition alleged that in the written warranty of capacity in the original sales contract the term "per day" meant a day of 10 hours. It was alleged that by properly feeding these crushers they would produce only about 110 or 115 tons of 2½ inch limestone crushed rock in 10 hours, and about 270 tons in 24 hours. Allegations were contained to the effect that appellant promised to furnish a competent man to stay on the ground and after installing the equipment instruct appellees in the method of operating same; that after defendants discovered that the rock crushers would not produce more than 276 tons per day of 24 hours they were induced to continue to operate them by the insistence on the part of the plaintiff that they could be made to produce 600 tons, and by its promise to send men to supervise their operation; that after the men sent by plaintiff took charge of the operations no greater production than 276 tons per 24 hours could be obtained.

It was further alleged that, had the crushers and equipment been able to produce 600 tons per day, as warranted, the defendants could and would have furnished the full amount of 42,000 tons of crushed rock, for which they would have received the sum of $31,500; that the expenses of the production of the same would have been the sum of $10,500; that because of the inability of the crushers to produce the amount of stone represented they were unable to fulfill their contract; that the amount which they were able to furnish was 22,740.5 tons; that on account thereof they lost the profits which they would have made from the sale of 19,259.5 tons; and that the net profits which they would have realized from the sale thereof would have been 50 cents per ton.

The foregoing is but an epitome of the many allegations of the pleading. Over and over it alleges that appellant sold the crushers and equipment for the purpose of enabling appellees to perform their contract with the Stuckey Company, and that the contract with the Whitham Company was not an independent contract not contemplated by the parties at the time of the sale, but was in fact but the carrying out of the contract which appellees had with the Stuckey Company. Specific allegations are contained showing the net loss sustained by reason of their inability to furnish all the crushed rock contracted for. In our view the pleading was not subject to any of the exceptions lodged against it.

It is the general rule that losses resulting from a collateral contract may not be regarded as arising out of breach of the contract upon which the action is founded. The basis for this rule is that such damages are not presumed, as a matter of law, to have been in the contemplation of the parties. But such damages are not condemned by law. If the contract upon which the suit is based was entered into for the purpose of enabling the complaining party to comply with a prior existing contract, or for the purpose of enabling him to enter into a future contract then contemplated by the parties, no just reason can be perceived for denying the recovery of such profits as an element

of damages. 17 C. J., p. 748, § 78. The question has been discussed many times by the courts of our state. A ·comparatively recent clear statement of the rule is made by. Judge Critz, in the case of McGuire v. Osage Oil Corp. (Tex. Com. App.) 55 S. W.(2d) 535, 537, in this language:

"It is also practically the universal rule of law in this country and in England that recovery can be had for damages or losses resulting from collateral contracts affected by the breach of the suit contract, but this is not permitted, unless the collateral contract was· known to, or in contemplation of, the parties, at the time the suit contract was entered into. 17 C. J. p. 748, § 78. We think this is but another application of · the general rules already announced by ·us.'

"The reasons for the above rules are that all persons who are free to contract, or to refrain from so doing, have the right to contract in contemplation of the ordinary and natural incidents arising from either the performance or nonperformance of such contract, or such incidents and consequences as are known to, and in contemplation of, such parties at the time the contract is entered into."

Many Texas authorities of the same general import are collated in 13 Tex. Jur., p. 198 et seq. See, also, West Texas Utilities Co. v. Nunnally (Tex. Civ. App.) 10 S.W.(2d) 391; Citizens' National Bank v. Overstreet (Tex. Civ. App.) 77 S.W. (2d) 250. No stronger allegations could be found for the application of this rule than the foregoing, unless the allegations regarding the assignment from Stuckey to Whitham should be given the effect of making the rule inapplicable. If the contract between the Baldwins and Whitham was an independent contract not in the contemplation of the parties at the time the sales contract was made, then clearly no damages could be recovered in the instant suit based upon lost profits suffered on account of the inability of the Baldwins to perform that contract. But the pleading does not present that situation. Whitham was·alleged to be the assignee of Stuckey, and to have assumed, his contract with the Baldwins. Appellant, when it entered into the sales contract, contemplated that appellees would suffer damages in the event they were unable to perform their contract with Stuckey, and just as certainly contemplated the same damages in the event of their inability to perform this

contract with· any one who might assume it.

■ Appellant is in no position to insist that the contract between the Baldwins and Whitham was a new and independent contract. There was attached to the petition in cross-action a copy of a memorandum agreement between appellant and the Whitham Company, in which was the recital that the latter had assumed the written contract between the Baldwins and Stuckey. Having executed an agreement containing that recital, it is in no position to urge a demurrer based upon the contention that this contract was a new and independent one.

■ Thus viewing the two contracts, the demurrer complaining of the failure of the petition in cross-action to segregate the damages suffered under each of these contracts was properly overruled. The damages sought were a unit, and not those arising from inability to perform two separate collateral agreements.

■ Neither is the pleading subject to the exception that it furnished no facts to enable the court to measure the damages. With clearness it recited the number of tons of crushed rock which it was able to furnish, and the loss in net profits per ton on the amount which it was unable to furnish. No further allegations were necessary.

■ Other propositions are based upon an assignment that the court erred in overruling appellant's motion for a peremptory instruction, and an assignment that the court erred in overruling its motion for judgment non obstante veredicto. But little need be written upon these propositions. The evidence supports the allegations of the petition above discussed. There is no assignment complaining of the excessiveness of the verdict, or that the answers of the jury were contrary to the great weight and overwhelming preponderance of the evidence. The assignments are that a peremptory instruction should have been given, or, what amounts to the same thing, that judgment should have been rendered non obstante veredicto. Clearly appellees were entitled to some damages. Under the judgment of the court they lost the rock crushers and equipment and forfeited a large sum of money which they had paid thereon. They proved special damages which were in the contemplation of the parties at the time the sales contract containing the ex-

press warranty was entered into. We incline to the view that the evidence supports the amount of the jury's award, but however that may be, it would clearly support an award of a substantial amount and no assignment complains of its excessiveness.

Appellant's brief stresses the fact that in the contract between the Baldwins and Whitham it was provided that More & Moore, Inc., was to furnish 150 cars of rock for use in constructing the highway, which rendered it uncertain as to how much rock the Baldwins were to furnish. We were somewhat hampered in determining just what was More & Moore's relation to this matter by the fact that the evidence throwing light thereon came to an abrupt end in the middle thereof. Page 161 of the statement of facts records the unfinished testimony of M. A. Baldwin on the question and page 162 is missing therefrom. However, there is a sufficient showing to justify the trial court in overruling the motion for a peremptory instruction. It is made to appear that shortly before Whitham purchased the Stuckey contract with the highway commission, he, Whitham, was awarded a contract to pave another section of the same highway. Whitham contracted with More & Moore for crushed rock to be used under his contract, and that was the rock to which the contract with the Baldwins referred. There was direct testimony that the Baldwins were unable to furnish 19,-259 tons of the amount which they had contracted to furnish; that their failure to furnish same was due to the lack of capacity of the crushers; and that their profits would have been 50 cents per ton. Under this testimony they were entitled to a judgment irrespective of the rights and obligations of More & Moore.

█ Under the same assignment, that the court erred in overruling appellant's motion for a peremptory instruction, it is presented that M. A. Baldwin and W. P. Caudle did not sue as surviving members of the partnership of Baldwin & Baldwin, but as individuals, and that they had no right to recover in that capacity. This suit was instituted by appellant. It sued M. A. Baldwin and W. P. Caudle, alleging that after the execution of the sales contract J. H. Baldwin died intestate; that there is no administration pending on his estate; that M. A. Baldwin and W. P. Caudle are the surviving members of the partnership and are in possession and active charge of the partnership property; that they are the legal representatives of the partnership entitled to administer its affairs, and are the only proper and necessary parties defendant to this suit. These allegations in the appellant's petition cure any defects in the petition complained of which may have existed in the defendants' answer and cross-action. Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 128, 76 S. W. 745, 64 L. R. A. 349, 104 Am. St. Rep. 857, 1 Ann. Cas. 252; Northwestern Nat. Ins. Co. v. Woodward, 18 Tex. Civ. App. 496, 45 S. W. 185; Barnes v. Williams (Tex. Civ. App.) 143 S. W. 978; Barton v. Flanagan (Tex. Civ. App.) 25 S.W.(2d) 947. Further, the question presented is one of the right to recover in the capacity in which appellees sue, and can be raised only by a verified plea· in abatement. Rev. St. 1925, art. 2010. Surviving members of a partnership may. maintain suits upon claims due the firm. Of course, they hold the money when recover‐ ed as trustees, and must account to the representatives of the deceased partner for his share thereof. Amarillo Nat. Bank v. Harrell (Tex. Civ. App.) 159 S. W. 858; Shivel & Stewart et al. v. Greer Bros., 58 Tex. Civ. App. 115, 123 S. W. 207; 47 C. J. 1043; 32 Tex. Jur., p. 516 et seq. Since the right existed in M. A. Baldwin and W. P. Caudle to maintain the suit, as survivors, clearly the question presented is one of the right to recover in the capacity in which they sued, and, therefore, comes within the plain provisions of the above statute.

█ It is assigned that the court erred in not construing for the benefit of the jury the contract between the Baldwins and Stuckey, and the contract .between the Baldwins and Whitham and in not giving the jury proper instructions on the measure of damages. We are not certain what question was intended .to · be presented by this assignment. The court evidently did construe the contracts. The case having been submitted on special issues, it would have been improper for the court to give the jury general instructions regarding the proper construction of the contracts. If the complaint is lodged at the failure of the court to give the jury a correct measure of damages, it presents nothing for consideration The court did give a measure of damages, and, if appellant had objections to this measure, it should have timely pointed out those objections and briefed an assignment thereon.

We have considered each and every assignment briefed by appellant. We discover that on or about submission day appellant filed a written argument and .reply brief in which there seem to be some new assignments. We have not considered them because they come too late. Our conclusion is that no reversible error is presented, and that the judgment of the trial court should be affirmed, and it is so ordered.

On Rehearing.

The statement in the original opinion that we did not consider new assignments appearing in a written argument filed by appellant on or about submission day appears to have been misunderstood by counsel. We did consider the argument and propositions contained in this reply brief, but did not feel justified in considering assignments there presented for the first time. This action, in our opinion, is not to be construed as a strict and technical application of arbitrary rules. The question has many times arisen, and courts have uniformly held, so far as we know, that new assignments filed in a reply brief on submission day present no question for review. Among cases so holding, see the following: Glover v. Houston B. & T. Ry. Co. (Tex. Civ. App.) 163 S. W. 1063; Greene Gold-Silver Co. v. Silbert (Tex. Civ. App.) 158 S. W. 803; St. Louis S. W. Ry. Co. v. Texas Packing Co. (Tex. Civ. App.) 253 S. W. 864.

It is contended that our opinion fails to touch upon the proposition that appellees were estopped to assert their cause of action for special damages by having retained and operated the machinery and made payments thereon with full knowledge that it was not producing the quantity of rock warranted.

In our view, this contention is fully disposed of by our holding that it was a case warranting the award of special damages. We did not think it necessary to discuss the contention that the only remedy available to appellees was one for rescission. If that were the rule, special damages would never be recoverable.

We have carefully considered the able motion for rehearing, and, while we realize that the evidence in some particulars is not of that conclusive nature desirable, still we are of the opinion that no question presented requires, or warrants, the reversal of the judgment below. The motion is accordingly overruled.