## OSAGE OIL CORPORATION et al. v. McGUIRE. *

### No. 12450.

Court of Civil Appeals of Texas. Fort Worth. April 4, 1931.

Rehearing Denied May 2, 1931.

---

*Writ of error granted.

Cantey, Hanger & McMahon, of Fort Worth, and Vinson, Elkins, Sweeten & Weems, of Houston, for appellants.

McFarlane & McFarlane, of Graham, for appellee.

BUCK, J.

This is a suit by H. B. McGuire, of Young county, against the Osage Oil Corporation, an Oklahoma corporation doing business in Texas, and the Vacuum Oil Company, a New York Corporation doing business in Texas. Plaintiff sued the corporations for an alleged unreasonable and unwarranted delay in delivering to plaintiff assignments of certain lease acreage out of the Mrs. D. C. Clayton tract, out of the James Matthews survey, being 80 acres out of the 320-acre Clayton tract, located in Jack county. Plaintiff alleged that on or about June 15, 1929, by agreement with the two defendants, it was provided that the plaintiff should drill a well on the described land to a depth of 3,500 feet, unless oil or gas was found in paying quantities at a less depth, and that plaintiff should receive as compensation for the drilling of said well assignments from the defendants conveying full title to the east 80 acres, running full length north and south of said Clayton tract, and extending west a sufficient distance to contain the 80 acres. It is shown in the record that these assignments were placed in escrow with the First National Bank, of Jacksboro, Tex., and that the well was drilled to the depth of 2,892 feet on August 25, 1929, at which depth the driller encountered gas producing sand, and that gas flowed out of the well to the amount of 1,800,000 cubic feet per day. . That at the time said gas was discovered, on August 25, 1929, Mr. Jenks, a scout for the Osage Oil Corporation, and Mr. Woodburn, a scout for the Vacuum Oil Company, were present. That a test of the amount of gas flow was made, and it was shown that a flow of 1,800,000 cubic feet was produced.

The plaintiff sought recovery for the rental value of his drilling rig and tools from September 2, 1929, to October 15, 1929; and for the wages of a watchman, claimed to be necessary, for the same time, and the alleged reasonable market value for McGuire's time for the same period.

The defendants filed their answers, consisting of a general demurrer, and certain special exceptions, which will be noticed, if appears to be necessary, further in this opinion.

The court submitted the cause upon special issues, which issues, together with the answers thereto, are hereinafter set out:

"Special Issue No. 1: Do you find from a preponderance of the testimony that gas was found in paying quantities in the well drilled by H. B. McGuire on the Clayton land, being the well in question in this suit on August 25, 1929. Answer: Yes.

"Special Issue No. 2: From a preponderance of the evidence, when was each of the defendants notified that the well in controversy was making gas at the rate of approximately 1,500,000 cubic feet of gas per day, or more? Answer: August 25, 1929."

The court instructed the jury with reference to this answer as follows:

"In this connection you are instructed that notice to any agent of the defendants is notice to the respective defendant.

"Special Issue No. 3: Did the defendants herein, within a reasonable time after they had received notice that the well in question was making gas at the rate of approximately 1,500,000 cubic feet of gas or more per day, consent for the First National Bank of Jacksboro, Texas, to deliver the assignments in question to said McGuire? Answer: No.

"Special Issue No. 4: Was it reasonably necessary that plaintiff, McGuire, leave his drilling rig and tools at the well in question from the time of the discovery of gas and after September 2, 1929, until said well was delivered to the Brazos River Gas Company? Answer: Yes.

"Special Issue No. 5: State and find how many days the plaintiff's said drilling rig and tools and equipment remained idle at said well? Answer: 43 Days.

"Special Issue No. 6: What was the reasonable rental value per day, if any, of plaintiff's said drilling tools and equipment during the time they were idle, if they were. Answer: $18.00.

"Special Issue No. 7: Was it reasonably necessary for the plaintiff to keep and maintain a watchman at said well in question on and after gas was found in said well until the well was delivered to the Brazos River Gas Company? Answer: Yes.

"Special Issue No. 8: How many days, if any, was it necessary for the plaintiff to

maintain said watchman at said well? Answer: 43 days.

"Special Issue No. 9: What was the reasonable amount per day necessary for the plaintiff to pay said watchman? Answer: $5.00.

"Special Issue No. 10: Did the plaintiff, McGuire, suffer any loss of time from and after September 2nd, 1929, until the well in question was delivered to the Brazos River Gas Company? Answer: Yes.

"Special Issue No. 11: How many days did he suffer the loss of said time? Answer: 43 days.

"Special Issue No. 12: What was the reasonable value per day of plaintiff's time during said period? Answer: $8.00.

"Special Issue No. 13: Find and state what date, if any, the plaintiff gave the defendants notice that he had sold said well in question to the Brazos River Gas Company? Answer: No date found."

Upon this verdict so returned, the court entered judgment for the plaintiff and against the defendants, jointly and severally, for $1,-333, from which judgment the defendants have appealed.

### Opinion.

It is shown that on August 29, 1929, plaintiff made a contract with the Brazos River Gas Company to convey to said company the 80 acres, which the defendants had agreed to assign to plaintiff. This contract, in part, provides:

"While the abstract is being furnished and title being approved, second party shall have the right to take over said gas well on said lease as of this day, and may, at its option, drill same deeper and put same in condition for gas production. Second party is to pay all labor and furnish all additional pipe for the purpose of drilling said well deeper and all material in equipping same as a gas well and it is understood that the derrick, rig, casing on the ground, and in the well, at this date, and all tools belong to and are the property of first party, but same are to be furnished by first party to second party in drilling said well deeper and in equipping same, as a gas well without charge. After said well is drilled deeper and equipped, the derrick, tools and all casing, except that furnished by second party, are the property of first party and may be removed from the premises by the first party and the casing may be pulled by first party and that which is not pulled shall forever remain the property of first party and first party shall have the right to pull the same at any time after said well has been abandoned or ceases to produce gas.

"Both first and second party shall have full and complete right of ingress and egress and joint possession of said premises for the purpose of drilling for the respective minerals owned by them from time to time and in case first party drills a well which produces gas only, second party shall have the option of paying for the actual cost of drilling and equipping said well and take same over as a gas well. On the other hand, should second party drill a well which proves to be an oil well, then first party shall have the option of taking over the same as an oil well by paying the second party the actual cost of drilling said well, but if in either event should such well prove to be a producer of both oil and gas, then the parties hereto agree to make such adjustment as may be equitable and right in the premises at the time."

The evidence further shows that the Brazos River Gas Company drilled the well 8 more feet on October 15, 1929, the date upon which any damages suffered by plaintiff, and for which he pleaded, ceased. The evidence further shows that, when plaintiff notified the defendants that he had completed a gas well, he told them that he intended to drill the well deeper. The defendants answered the letters to them, and asked that he drill the well deeper and to notify them when it was drilled deeper. It was drilled only 7 or 8 feet deeper, making the hole 2,900 feet deep. It seems to us that, by the terms of the contract with the Brazos River Gas Company, it was the duty of plaintiff, and he was bound, to leave his drilling rig and equipment at the location of the well until the gas company should exercise its option to drill the well deeper. We do not see how he could properly charge the defendants for the use of his tools and equipment, when, under the contract with the Brazos River Gas Company, he was required to leave his rig and drilling equipment, and tools, until the Brazos River Gas Company should exercise its option to drill the well deeper. Nor does it seem to us that he could properly charge the defendants with the reasonable cost of the watchman's time to look after the tools and equipment, and to keep them from being stolen. Nor does it appear to us that he could charge the defendants with the reasonable value of his (the plaintiff's) time during that period. All of these elements of damage were covered by plaintiff's contract with the Brazos River Gas Company. Therefore, we conclude that the plaintiff below failed to sustain the elements of damage which he pleaded, and that the motion of defendants below for a peremptory instruction should have been granted.

There are a number of other questions involved in this case, not necessary for us to determine; for instance, "what constitutes a well in paying quantities," etc. But we think that what we have said disposes of every issue raised.

We therefore reverse the judgment of the court below and here render judgment for the defendants.