## McGUIRE v. OSAGE OIL CORPORATION.

### No. 1611—6016.

Commission of Appeals of Texas, Section A.

Dec. 22, 1932.

McFarlane & McFarlane and F. V. Hinson, all of Graham, and John D. McComb, of Jacksboro, for plaintiff in error.

Cantey, Hanger & McMahon, of Fort Worth, and Vinson, Elkins, Sweeton & Weems, of Houston, F. T. Denny, of Fort Worth, and Tom Fletcher, of Houston, for defendant in error.

CRITZ, J.

This suit was instituted in the district court of Jack county, Tex., by H. B. McGuire against Osage Oil Corporation, and Vacuum Oil Company, both corporations, to recover damages for the alleged breach of contracts he had with such companies. Trial with a jury in the district court resulted in a verdict and judgment for McGuire. On appeal by the oil companies, the Court of Civil Appeals reversed this judgment, and rendered judgment for the oil companies. 41 S.W.(2d) 302. McGuire brings error.

536

For the purposes of this opinion, we shall state the facts of this case in their most favorable light for McGuire. So stated, they are as follows: On June 15, 1929, McGuire entered into a contract with Osage Oil Corporation, and on June 17, 1929, he entered into a contract with Vacuum Oil Company. By the terms of these contracts he agreed to drill a well on the east 80 acres out of the 320-acre tract of land known as the Clayton tract, on the James Matthews survey, in Jack county, Tex., which was then jointly held by the two oil companies under oil and gas leases. It was agreed that said well was to be drilled to a depth of 3,500 feet, unless oil or gas was found in paying quantities at a lesser depth.

As compensation for drilling the above well, McGuire was to receive an assignment from each and both of the oil companies of their leasehold interest to said E. 80 acres of land. Both contracts contained provisions making time the essence thereof.

McGuire drilled the well provided for by the above contracts to a depth of 2,892 feet, completing the same on August 25, 1929, with a gas production of 1,800,000 cubic feet per day. We treat this as production in paying quantities. On the completion of the well on August 25, 1929, McGuire notified the two oil companies of such fact, and demanded the delivery of the lease assignments to the 80 acres of land on which the well was located, as provided for in the above contracts.

On August 29, 1929, four days after the completion of the well, McGuire made a contract to sell the gas production from the well in question to Brazos River Gas Company. By the terms of this last contract, the Brazos River Gas Company was given the right to take over the well as of date of its contract, and drill the same deeper, and put in condition for production. The Brazos River Gas Company was to pay the expense of the above work, but McGuire was to furnish the derrick, rig, casing, etc., on the ground and in the well, at the date of the contract, and all tools, etc., necessary therefor.

The two defendant oil companies seem to have delayed delivering their lease assignments to McGuire after the completion of his contract with them because of their contention here, treated as legally wrong, that the well should be deepened before they were obligated to deliver. Such delay compelled McGuire to leave his rig, tools, casing, etc., on the lease 43 days longer than otherwise would have been necessary to comply with his contract with the Brazos River Gas Company. This delay was occasioned in order for McGuire to comply with his contract with the Brazos River Gas Company. McGuire suffered damages during such 43 days,

as found by the jury, in the total sum of $1,333, as follows:

Rental value of rig at $18.00 per day .............................$ 774.00
Wages of watchman to watch property at $5.00 per day............. 215.00
Value of McGuire's time at $8.00 per day ............................ 344.00

Total ......................$1333.00

At this point we call attention to the fact that the contract between McGuire and Brazos River Gas Company was entered into long after the original contracts between McGuire and the two defendant companies were entered into; indeed, the last contract was entered into after McGuire contends he had fulfilled the suit contracts.

It is evident from the statements we have made that McGuire is here attempting to collect special damages growing out of his contract with Brazos River Gas Company. So far as shown by this record, the Brazos River Gas Company contract was not directly or indirectly in the minds of the parties when the suit contracts were made.

The above oil companies contend that McGuire cannot recover the above items of damages for the breach of their contract with him because they are too remote, and could not have been in the minds of the parties at the time the suit contracts were made. In this connection the defendant oil companies further contend that McGuire is wrongfully attempting in this action to recover damages growing out of a contract between himself and Brazos River Gas Company, made long after the suit contracts were made, and not known to or in contemplation of the parties to the suit contracts at the time of their inception.

McGuire, in effect, admits that the damages here sued for grew, in a measure, out of his contract with Brazos River Gas Company, made after the suit contracts were entered into, but contends that he is nevertheless entitled to recover such damages, because the pleadings and proof show that the defendant oil companies had knowledge of the terms of his contract with Brazos River Gas Company at and during the time they breached the suit contracts.

It is undoubtedly the general rule of law in this country, and in England, that damages recoverable for the breach of a contract are those that may fairly and reasonably be considered as arising naturally, or according to the usual course of things from the breach of the contract itself, or such damages as may reasonably be supposed to have been in the contemplation of the parties to the contract at the time it was made, as the probable result of the breach thereof. Jones v. George, 61 Tex. 345, 48 Am. Rep. 280;

Calvit v. McFadden, 13 Tex. 324; Houston & T. C. Ry. Co. v. Hill, 63 Tex. 381, 51 Am. Rep. 642; Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104; 8 R. C. L. p. 455, § 25, and notes; 17 C. J. p. 740, § 75, and notes.

■ It is also practically the universal rule in England and America that damages arising out of special circumstances, different from those which would naturally and properly flow from the breach of such contract, can be recovered only where it is shown that at the time of the making of the contract the defaulting party had knowledge of such special circumstances. 17 C. J. p. 746, § 77; 8 R. C. L. p. 459, § 27; Jones v. George, supra.

It seems that the above rule is known as the rule in Hadley v. Baxendale, an early English case, decided in 1854. Hadley v. Baxendale, 9 Exch. 341; 23 L. J. Exch. 179; 18 Jur. 358; 5 Eng. Rul. Cas. 502. It, however, is but an embodiment of civil law principles, and is substantially the same rule as had been stated at an earlier date in the Code Napoleon, and by Chancellor Kent. 8 R. C. L. p. 455, § 25, supra.

■ It is also practically the universal rule of law in this country and in England that recovery can be had for damages or losses resulting from collateral contracts affected by the breach of the suit contract, but this is not permitted, unless the collateral contract was known to, or in contemplation of, the parties, at the time the suit contract was entered into. 17 C. J. p. 748, § 78. We think this is but another application of the general rules already announced by us.

The reasons for the above rules are that all persons who are free to contract, or to refrain from so doing, have the right to contract in contemplation of the ordinary and natural incidents arising from either the performance or nonperformance of such contract, or such incidents and consequences as are known to, and in contemplation of, such parties at the time the contract is entered into. Of course, all persons should make their engagements in good faith and with an honest intent to carry them out, but unexpected events may transpire which make it impossible for a party to perform his contract, and few would want to enter into contracts if they thereby assume the responsibility of carrying out other engagements over which they have no control, and which were not in contemplation or existence at the time they contracted. Horner v. Wood, 16 Barb. (N. Y.) 386, 389.

The trend of the later decisions in this state is to recognize some modification of the above rules as applied to contracts made by public utilities as such. Conn v. Texas & N. O. R. Co., 14 S.W.(2d) 1004 (Tex. Com. App. opinion approved); Western Union Tel. Co. v. Hice (Tex. Com. App.) 288 S. W. 175; Bourland v. Choctaw, O. & G. R. Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647. As shown by Judge Nickels of this section of the commission in the Conn and Hice Cases, supra, the reasons underlying the rule in Hadley v. Baxendale do not have full application to public utilities such as railroads and telegraph companies because they do not have the option to make, or refuse to make, the contract in the first instance, and could not charge extra compensation if they were informed at the time of making the contract of the special consequences of a breach thereof.

■ We have carefully read the authorities cited by McGuire and have made diligent search ourselves, and have found no authority which would justify or authorize a holding that the two defendant oil companies in this case can be held liable on their contracts with McGuire for special damages arising out of his subsequent contract with Brazos River Gas Company.

The effect of the opinion of the Court of Civil Appeals is to hold that, in so far as the pleadings and proof of this record show, all the elements of damage embraced in the verdict and judgment for McGuire were covered and occasioned by his contract with Brazos River Gas Company, and therefore he failed to make out a case of damage growing out of the suit contracts. This is in harmony with the rules of law we have announced. In fact, it is but the proper application of such rules without announcing in so many words.

■ The Court of Civil Appeals reversed the judgment of the district court, and rendered judgment for the defendant oil companies. What we have said shows that we are in agreement with the judgment of reversal, but we do not think the judgment should have been rendered. The mere breach of the contract would entitle McGuire to nominal damages. Furthermore, we cannot say for certain that on another trial McGuire will not be able to plead and prove a case within the rules of law we have announced. We do hold, however, that so far he has done neither.

We recommend that the judgments of the Court of Civil Appeals and district court be both set aside and reversed, and that this cause be remanded to the district court for a new trial.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.