LONGVIEW CONSTRUCTION AND DE-VELOPMENT, INC., Appellant,

v.

LOGGINS CONSTRUCTION COMPANY, Appellee.

No. 801.

Court of Civil Appeals of Texas, Tyler.

May 8, 1975.

Rehearings Denied June 5, 1975.

Holcomb & Norwood, Tyler, Fred Erisman, Longview, Ramey, Flock, Hutchins, Grainger & Jeffus, Mike A. Hatchell, Tyler, for appellant.

John R. Brumbelow, Tyler, for appellee.

MOORE, Justice.

This is a suit brought by a prime contractor against a sub-contractor for damages for breach of contract. Plaintiff Loggins Construction[1] of Tyler, Texas, brought the suit to recover damages alleged to have resulted from defendant Longview Construction and Development, Inc.'s breach of its sub-contract with Loggins to perform certain excavation and earth work in conjunction with construction of a football stadium for Stephen F. Austin University of Nacogdoches, Texas.[2]

---

1. Hereafter, the parties will be referred to as they appeared in the trial court or by proper name.

2. Hereafter referred to as the "owner."

The case was tried before a jury and judgment was rendered in favor of Loggins for the sum of $49,255.00, based on the jury's finding that Longview failed to complete the work and failed to substantially perform its contract. Longview duly perfected this appeal.

We affirm in part and reverse and render in part.

The evidence shows that Loggins Construction Company, as general contractor, contracted with Stephen F. Austin University to construct the stadium. One of the component parts of the project was site clearing and certain dirt work encompassing (1) clearing, grading, and filling the site, (2) stripping and stockpiling the top soil, (3) making a 20-foot excavation for the football field, (4) spreading sand on the football field, (5) construction on the east and west sides of the field of two earth mounds, called "berms," upon which bleachers, walks, concession stands and a press box were to be constructed, and (6) some grading and filling on two parking lots.

Longview Construction and Development, Inc., was the successful bidder on the foregoing work and contracted with Loggins to do the work for the sum of $101,000.00.

The pertinent parts of the sub-contract are as follows:

"FIRST: The SUB-CONTRACTOR agrees to furnish all labor, materials, insurance, taxes, tools and equipment to perform all work necessary to complete the,

Site Clearing—(No Burning of Trees or Brush)

Strip Top Soil & Stockpile

Machine Excavation, Fill & Select Fill to Subgrade

Spread Sand Fill at Football Field (Sand by LCC) for the above named structure, according to plans, specifica-

tions, and addendum No's 1 & 2 heretofore furnished by above named architect, and to the full satisfaction of said architect.

\* \* \* \* \* \*

"EIGHTH: In consideration whereof, the said CONTRACTOR agrees that he will pay to the said SUB-CONTRACTOR in monthly payments, the sum of $101,000 for said materials and work, said amount to be paid as follows: Ninety per cent (90%) of all labor and material which has been placed in position by said SUB-CONTRACTOR to be paid on or about the 15th of the following month, based on estimate submitted to CONTRACTOR by SUB-CONTRACTOR no later than the last day of the month, except the final payment which the said CONTRACTOR shall pay to the said SUB-CONTRACTOR within 30 days after the SUB-CONTRACTOR shall have completed his work to the full satisfaction of the said architect or owner."

The plans and specifications provided that the football field and surrounding area were to be excavated below ground level and the soil was to be piled on each side to serve as a foundation for the bleachers. The specification provided that the soil was to be excavated and stacked at a certain specified grade.

Longview commenced work on the project on or about January 1, 1972. By September 20, 1972, the football field and parking lots had been cleared and excavated, and the slopes on both sides of the field had been constructed. Relying upon the conclusion of its foreman, Mr. Sipes, Longview determined that the sub-contract had been completed and informed Loggins of the completion. Upon inspection of the work, Ray Loggins, President of Loggins, determined that the work was not satisfactory and did not conform to the plans and specifications because the slopes on both the front and back sides contained too much soil and were not constructed on the

grade level required by the specifications. Loggins testified that the subgrade on parking lots A and B and other areas was not excavated to the level required by the plans and specifications because it was too high in some areas and too low in others. Two surveyors, Chris Marek and Frank Mitchell, who worked on the job for a registered engineer employed by Loggins, corroborated Loggins' testimony. They testified that neither the slopes nor the excavated areas were on grade at the time Longview left the job. Mitchell stated that he told Longview's Mr. Sipes that the slopes were not on the required grade and he replied that he "just couldn't do it."

Ray Loggins requested Longview to return and complete the job, but Longview maintained that the job was completed according to the plans and specifications and refused to return. Since Loggins was unable to get another contractor to complete the work on a bid basis, he hired Simon Traylor & Son to·complete the job on an hourly basis. The evidence shows that in order to complete the job, Traylor & Son were required to remove from one to three feet of soil from the slopes constructed by Longview. In order to meet the requirement of the plans and specifications, approximately 30,000 yards of soil had to be removed. The removal of the soil from the upper part of the slopes required the use of specialized equipment making the work more expensive. It took approximately five months to complete the work. According to Ray Loggins, the total cost to complete the job according to the plans and specifications amounted to the sum of $63,976.58. His testimony as to the amount paid Simon Traylor & Son was corroborated by numerous cancelled checks.

After the project was completed, Loggins brought this suit against Longview seeking to recover (1) the sum paid Simon Traylor & Son to complete the sub-contract, (2) the value of the time and equipment used by Loggins to complete the contract, and (3) for special damages as a result of a $250.00 per day penalty assessed against Loggins by the owner for delay in completing the contract. Longview answered with a general denial and filed a cross-action in the nature of a sworn account alleging that it had completed its sub-contract and praying for a recovery of the balance due on the sub-contract in the amount of $20,395.58.

The jury found in response to the respectively numbered special issues (1) that Longview failed to perform all work necessary to complete the contract according to the plans and specifications, (2) that the reasonable cost to Loggins to complete the contract according to the plans and specifications was $63,400.58, (3) that Loggins failed to prove by a preponderance of the evidence that Longview knew that Loggins would be required to pay the owner liquidated damages for failure to complete the stadium on time, (4) that Longview reasonably should have known that Loggins would be liable for liquidated damages in the event the project was not completed on time, (5) that Longview's failure to complete the job in a workmanlike manner so as to meet the progress of the job (6) which was a proximate cause of Loggins' delay of (7) 25 days, (8) that Longview did not substantially perform the contract, and (9) that Loggins did not substantially interfere with the performance of the work by Longview.

The final judgment of $49,255.00 was computed as follows: (1) completion cost found by the jury, $63,400.58, (2) plus special damages caused by delay attributable to Longview of $6,250.00, and (3) less retainage admittedly due Longview in the amount of $20,395.58.

By the first point of error Longview urges that the trial court erred in overruling its motion for instructed verdict and motion non obstante veredicto. Longview takes the position that the sub-contract provides for monthly payments as the work progressed based on the architect's estimate of the percent of the work per-

formed, and that the estimate of the architect is final and conclusive. Based on this premise Longview argues that since the evidence conclusively shows that the architect certified the work to be 98% complete when it stopped work, Loggins was obligated, as a matter of law, to pay the full contract price, less 2% or $2,573.00 which would be required to bring the work to full completion. We cannot agree with this proposition.

The evidence shows that Loggins, in accordance with the contract, certified to the architect as to the percentage of the work completed each month. In turn, the architect certified the same percentage to the owner and recommended payment on that basis. The last such certification was made on August 25, 1972, and shows that both Loggins and the architect certified that 98% of the work had been completed.

■ In support of its contention Longview relies on the holding in Kilgore v. Northwest Texas Baptist Educational Soc., 89 Tex. 465, 35 S.W. 145 (1896). The contract involved in that case was one in which the parties expressly agreed that the owner would pay the contractor as the work on the building progressed according to the estimate of the architect, whose estimates were by the terms of the contract made binding upon the owner. In the instant case the parties did not agree that the estimates for payment by the architect would be final and conclusive. Hence the decision cited is not applicable. Funk v. House, 168 S.W. 481, 485 (Tex.Civ.App., 1914, dism'd.). The rule announced in *Kilgore* is operative only where it appears from the express terms of the contract that it was the intention of the parties that the determination of the person to whom the decision was entrusted would be final and conclusive; and such a provision will not be implied. Black v. Acers, 178 S.W.2d 152 (Tex.Civ.App., Dallas, 1944, writ ref.); Delhi Pipeline Corporation v. Lewis, Inc., 408 S.W.2d 295 (Tex.Civ.App., Corpus Christi, 1966, writ ref'd, n. r. e.).

■ There is nothing in the sub-contract, addendums 1 and 2, or the plans and specifications providing that the determination of the architect would be final, binding or conclusive, consequently, the fact that the architect had certified to the owner that the sub-contract was 98% complete on the date Longview left the job would not be binding and therefore would not constitute conclusive proof of the fact that 98% sub-contract work had been performed before Longview left the job. The controlling issue was whether Longview failed to perform all work necessary to complete the work according to the plans and specifications. In response to Special Issue No. 1, the jury found that it did not. The evidence, when viewed in a light most favorable to Loggins, is sufficient to support the finding. Defendant's first point is overruled.

By its second point Longview contends that the trial court erred in overruling its motion for instructed verdict and for judgment notwithstanding the verdict because Loggins failed to discharge its burden of proving, as a condition precedent, that the architect was not satisfied with the work. Longview argues that since the architect did not testify and since there is nothing in the evidence showing that the architect was dissatisfied with its work, Loggins failed to prove the contract was breached according to the terms agreed upon for gauging performance. The proposition is without merit and is overruled.

■ Here again, Longview's contention rests on the premise that the parties agreed to make the architect the sole arbiter of the amount of the work completed. The contract does not so provide. In paragraph one of the contract, Longview agreed to perform all work necessary to complete the contract according to plans and specifications to the full satisfaction of the architect. By Section eight Loggins agreed to make monthly payments to Longview based upon an estimate furnished by it showing the amount of the work com-

pleted up to 90% of the contract price. The final 10% was to be paid within 30 days after the sub-contractor had completed the work to the full satisfaction of the architect or owner. Such stipulations look to the final result but do not amount to an agreement that the architect was to be the final arbiter of the amount of the work completed. In the absence of an agreement that the decision of the architect was to be final, binding and conclusive, the individual opinion of the architect is not a condition precedent to Loggins' right of recovery for breach of contract. 17A C.J.S. Contracts § 499(2) p. 752: Linch v. Paris Lumber & Grain Elevator Co., 80 Tex. 23, 15 S.W. 208 (1891); Olson v. Burton, 141 S.W. 549 (Tex.Civ.App., 1911, n. w. h.); Feldman v. Desantis, 156 N.E. 868 (Sup. Court of Massachusetts, 1927). For this reason Loggins was not required to prove that the work was unsatisfactory to the architect or owner. Defendant's second point is overruled.

By its third point Longview contends that the trial court erred in allowing Loggins a recovery of special damages in the amount of $6,250.00 representing the liquidated damage penalty assessed against Loggins by the owner at the rate of $250.00 per day for its 25-day delay in completing the stadium project. Longview takes the position that since the jury refused to find that it knew of the liquidated damage clause in the contract between Loggins and the owner, Loggins failed to discharge its burden of proving Longview had notice of the circumstances producing such special damages and, therefore, Longview was not liable for such "special" damages. We sustain this contention.

Under the terms of the prime contract it was agreed that Loggins was to pay the owner $250.00 per day as liquidated damages in the event the project was not completed on or before September 1, 1972. There is nothing in the sub-contract indicating that the provisions of the prime contract were incorporated therein by refer-

ence, nor is there anything in the plans and specifications or addendums 1 and 2 apprising Longview of the stipulation between the owner and Loggins. Ray Loggins testified that he told Mr. Perry, Longview's vice president, of the $250.00 per day penalty provisions in the prime contract. He also testified that he furnished Longview with a Project Manual containing the stipulation. Longview's witness denied that they were supplied a Project Manual and also denied that Loggins told them of the penalty provisions. They testified that they knew nothing of such a provision until suit was filed. In view of the jury's finding, the jury apparently placed no credence in Loggins' testimony and accepted Longview's version that it did not know of the penalty provisions. It is undisputed that the owner assessed Loggins a penalty of $250.00 per day for the delay of twenty-five days which the jury found was caused by Longview's failure to complete the contract.

It is the general rule that losses resulting from collateral contracts may not be regarded as arising out of breach of the contract upon which the action is founded. The basis of this rule is "that such damages are not presumed, as a matter of law, to have been in the contemplation of the parties." Iowa Mfg. Co. v. Baldwin, 82 S. W.2d 994 (Tex.Civ.App., Eastland, 1935, dism'd.); 25 C.J.S. Damages § 24c, p. 671. In order for an injured party to recover from a defaulting party, the amount of damages which he has been required to pay to a third party as a result of his breach, the injured party must establish that the defaulting party, at the time he entered into the contract, had knowledge of the special circumstances producing such damages. 17 Tex.Jur.2d Damages, secs. 59, 61; West Texas Utilities Co. v. Nunnally, 10 S.W.2d 391 (Tex.Civ.App., Eastland, 1928, n. w. h.); Northwestern Steam Boiler & Mfg. Co. v. Great Lakes Engineering Works, 181 F. 38 (8th Cir. 1910). The parties are not presumed to know the con-

dition of each other's affairs nor to take into account the provisions of a contract with a third party that is not known or communicated. Berlin Development Corporation v. Vermont Structural Steel Corporation, 127 Vt. 367, 250 A.2d 189 (1968); Macchia v. Megow, 355 Pa. 565, 50 A.2d 314, 316.

■ "Compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made." Restatement, Contracts, Sec. 330; 5 Williston on Contracts, secs. 1347, 1356–1357. In view of the fact that Loggins failed to prove that Longview had actual knowledge of the liquidated damage provisions in the collateral contract, we are of the opinion that the trial court erred in rendering judgment against Longview for "special" damages. Consequently, that part of the judgment awarding Loggins special damages in the amount of $6,250.00 is reversed and rendered in favor of Longview.

Loggins undertakes to sustain the judgment for "special" damages on the basis of the jury's finding on Special Issue No. 4, wherein the jury found that Longview "reasonably should have known" that Loggins would be required to pay liquidated damages for failure to complete the project on time. In view of the jury's finding that Longview did not know that the prime contract contained a penalty provision, the parties obviously could not have contemplated at the time of the making of the contract that a breach thereof would give rise to a liability of this type. The "should have known" finding presumes a lack of knowledge and therefore forms no basis for an award of special damages. To hold otherwise would be contrary to the principle that the circumstances which occasioned such damages must have been foreseeable.

By the fourth point Longview contends the trial court erred in failing to enter judgment in its favor for $25,778.08 as prayed for in its cross-action brought in the form of a Sworn Account because Loggins failed to deny the claim under oath as is provided by Rule 185, Texas Rules of Civil Procedure. In the cross-action Longview sought a recovery of the balance due on the sub-contract.

■ Rule 185 provides that unless the party resisting a suit on sworn account shall file a written denial under oath, deny the claim or a part thereof, he will not be permitted to deny the claim or any part thereof at the trial. Longview argues that since Loggins failed to deny the claim under oath, the court was required to enter judgment on the cross-action in its favor and erred in refusing to do so. In reply, Loggins argues that the agreement amounted to a special contract and that Rule 185 is not applicable. We agree. Under the following authorities a contract of this type is a special contract and is not governed by the provisions of Rule 185. Meaders v. Biskamp, 159 Tex. 79, 316 S. W.2d 75 (1958); Langdeau v. Bouknight, 162 Tex. 42, 344 S.W.2d 435 (1961). Since Loggins was not required to deny the claim under oath, the trial court did not err in refusing to enter judgment on the cross claim. Defendant's fourth point is overruled.

Points five, six and seven assert that the jury's findings on Special Issues 1 and 2 are against the great weight and preponderance of the evidence and that the damages assessed by the jury in special Issue No. 2 is excessive.

After a careful review of the entire record and upon weighing all the evidence, both that in favor of and against the verdict and judgment, we have concluded that we would not be justified in holding that the judgment is against the great weight and preponderance of the evidence. Points 5 and 6 are overruled.

■ The contention that the amount of damages assessed by the jury was exces-

sive is overruled. The testimony of Ray Loggins, who was qualified as an expert witness, was sufficient to support the amount of the award. His testimony was corroborated by invoices and cancelled checks showing the expenditure of such amount. There is nothing to show that the verdict was affected by bias, sympathy or prejudice.

Finally, Longview complains of the action of the trial court in excluding the testimony of three witnesses who would have testified that Longview's work was impeded and delayed by other sub-contractors alleged to be in privity with Loggins.

The excluded testimony, offered by way of a bill of exception, shows that the witnesses would have testified that the work of other sub-contractors, as well as other unidentified persons on the job, interfered with Longview and as a result its work was delayed to some extent. None of the witnesses testified that any of Loggins' men or equipment interfered with Longview, nor was there any testimony that the interference by others prevented Longview from completing the job. The trial court excluded the testimony on the ground that it was irrelevant and immaterial and that it failed to connect Loggins with the alleged wrongful interference.

Generally speaking, where one party to a contract, by wrongful interference prevents the other party from performing, such action by the party at fault constitutes a breach of the agreement. The effect of such a breach is not only to excuse performance by the injured party, but also to entitle him to recover any damages sustained. 13 Tex.Jur.2d Contracts, p. 557, sec. 307. Longview neither pled that it was excused from performance nor did it seek a recovery by way of an offset for damages allegedly resulting from interference.

Longview argues first that the testimony was admissible to rebut plaintiff's allegation that it caused a delay of the project causing a penalty to be assessed against Loggins for failure to complete the project on time. Under the particular fact situation involved here, we fail to see how the excluded testimony was material. Even if it was, our previous holding that Loggins was not entitled to recover special damages for the penalty assessed against it renders the question of admissibility moot and immaterial. Rule 494, Texas Rules of Civil Procedure. Second, Longview contends the testimony was admissible because it was material to its allegation that Loggins breached its duty to coordinate all of the work on the job. We do not agree. The duty to coordinate the work is not mentioned in the sub-contract. While Loggins did assume such duty to the owner by virtue of the prime contract, the provisions of the prime contract were not incorporated by reference in the sub-contract. Consequently, even though other sub-contractors may have interfered with Longview, such would not amount to a breach of duty owed Longview. Further, in the absence of any testimony showing Loggins participated or acted in concert with third parties in causing Longview to be delayed, Loggins cannot be held liable ex delicto. Cox v. Process Engineering, Inc., 472 S.W.2d 585, 588 (Tex.Civ.App., 1971, n. w. h.). Defendant's eighth point is overruled.

That part of the judgment awarding Loggins a recovery for special damages in the amount of $6,250.00 is reversed and rendered in favor of Longview Construction and Development, Inc. The judgment will be reformed so as to grant Loggins Construction Company a recovery of $43,005.00. In all other respects the judgment is affirmed.

Affirmed in part and reversed and rendered in part.