**AMERICAN TITLE COMPANY OF HOUSTON, Appellant**

v.

**BOMAC MORTGAGE HOLDINGS, L.P., Appellee.**

No. 05–05–00874–CV.

Court of Appeals of Texas, Dallas.

July 20, 2006.

---

Matt E. Rubin, Williams, Birnberg & Andersen, L.L.P., Houston, for Appellant.

Tom Thomas, Winstead Sechrest & Minick, P.C., Dallas, for Appellee.

Before Justices WHITTINGTON, O'NEILL, and MAZZANT.

## OPINION

Opinion by Justice WHITTINGTON.

Bomac Mortgage Holdings, L.P., sued American Title of Houston for breach of

contract, fraud, violations of the Texas Deceptive Trade Practices Act, *see* TEX. BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 2002 and Supp.2005) (DTPA), and other claims relating to the financing of a mortgage. The trial judge entered judgment on the jury's verdict in favor of Bomac. American Title appeals, challenging the sufficiency of the evidence and alleging error in the trial judge's rulings regarding pleading of special damages, designation of responsible third parties, the jury charge, and amendment of pleadings. We affirm the trial court's judgment.

## BACKGROUND

In July 2000, Bomac loaned $288,000 to Anthony Norris to purchase property in Galveston County. American Title provided escrow and other services relating to the closing of the sale. Norris defaulted on the loan after Bomac sold it to a third party, Impac Funding Corporation. Bomac paid $197,343.82 to Impac and sued American Title alleging fraud in the transaction.

Although the parties offered contradictory testimony and the case was vigorously contested at trial, some basic facts about the transaction are well established. Lawrence Caldwell, a principal of First Interstate Financial Network and a mortgage broker, contacted American Title through Paulette Lee about providing services in connection with a sale of the property to Norris. At the time American Title opened its file on the transaction, the property was owned by SDGA Investments. The transaction financed by Bomac, however, was a sale of the property from First Interstate to Norris. The parties do not appear to dispute a "flip" took place in which the property was transferred from SDGA to First Interstate for $195,000,

then from First Interstate to Norris for $320,000, on the same day. The parties also do not appear to dispute the title commitment was altered to omit ownership information about the property or that $400 of the closing costs originally designated as a "review fee" to an attorney were used for Lee's personal rent payment.

Other facts relating to the transactions are disputed. The jury heard evidence regarding the use of proceeds from the Bomac loan to finance both sales, the source of Norris's downpayment, Bomac's instructions relating to the loan and whether the flip was a "simultaneous transaction" of which American Title was required to notify Bomac, whether Bomac relied on the altered closing documents, and other facts. In an eleven to one verdict, the jury found American Title defrauded Bomac, committed theft, and acted unconscionably. In the second phase of the trial, the jury awarded Bomac $250,000 in additional damages under the DTPA for American Title's knowing conduct. The trial judge entered judgment on the jury's verdicts.

## STANDARDS OF REVIEW

In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 286 (Tex.1998). We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 827 (Tex.2005). When reviewing a finding for factual sufficiency, we consider all of the evidence and will set aside the

finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

We review the trial judge's submission of instructions and jury questions under an abuse of discretion standard. *Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 824 (Tex.App.-Dallas 2003, pet. denied). To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Barnett,* 123 S.W.3d at 824. When the complaint on appeal is that the trial judge improperly submitted an instruction, definition, or question, reversal is warranted when, in spite of a timely objection, the trial judge submits an invalid theory of liability or an unsupported element of damage, and the error prevents appellant from demonstrating the consequences of the error on appeal. *See Barnett,* 123 S.W.3d at 825.

The trial judge's enforcement of a scheduling order is reviewed for abuse of discretion. *G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.,* 177 S.W.3d 537, 542 (Tex.App.-Dallas 2005, no pet.). A trial judge abuses his discretion when he acts arbitrarily or unreasonably without reference to any guiding rules or principles. *Reece Supply Co.,* 177 S.W.3d at 542.

### RESPONSIBLE THIRD PARTIES

American Title complains the trial judge erred in not permitting it to designate responsible third parties in accordance with the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004 (Vernon Supp.2005). Bomac counters that American Title's designation was not timely. We agree with Bomac. Under section 33.004, a defendant may seek to designate a person as a responsible third party by filing a motion for leave "on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date." TEX. CIV. PRAC. & REM.CODE ANN. § 33.004(a).

American Title filed its motion for leave to designate responsible third parties on July 21, 2004. Trial was set for August 2, 2004. American Title's motion was not timely under section 33.004(a), and Bomac filed an objection on July 26, 2004. In response to another motion by American Title, the trial date was continued until December 6, 2004. By agreed order, the parties extended the discovery cutoff and the dates for exchanging exhibits, making stipulations, filing witness lists, and making trial announcements. The agreed order did not extend the deadlines for designating responsible third parties or amending pleadings. American Title moved for a continuance of the December 6 date, and trial finally proceeded in January 2005.

American Title argues its motion to designate responsible third parties became timely because the trial dates were extended. The trial court's scheduling order setting the August 2, 2004 trial date, however, expressly provided "[r]eset or continuance of the Initial Trial Setting will not alter any deadlines established in this Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order." A scheduling order in *Reece Supply Co.* had similar language. *Reece Supply Co.,* 177 S.W.3d at 543, n. 2. In that case, we upheld the trial judge's order striking an amended petition as untimely even though it was filed more than seven

days prior to the date the case actually went to trial and even though the trial date had been reset several times from the initial trial date given in the scheduling order. *Reece Supply Co.*, 177 S.W.3d at 543 and n. 2 (resettings did not affect discovery period or deadline for amending pleadings because scheduling order provided continuance of trial date would not alter any deadlines unless otherwise provided by order, and record did not reveal any such order ever entered). As the trial judge noted when he overruled the motion, "the case was reset on a very limited basis to allow some additional discovery." American Title did not establish good cause for its untimely motion as required by section 33.004. The trial judge did not abuse his discretion by overruling the motion to designate responsible third parties.

## AMENDMENT OF PLEADINGS

■ American Title argues the trial judge erred in not permitting it to amend its pleadings to allege the affirmative defense of limitations. American Title's motion to add the affirmative defense of limitations is dated December 7, 2004; the trial court's scheduling order required amendments to pleadings to be made, at the latest, by seven days after the discovery period, which ended on November 12, 2004. American Title's proposed amendment on December 7 was not timely under the order. *See ForScan Corp. v. Dresser Indus., Inc.*, 789 S.W.2d 389, 393 (Tex. App.-Houston [14th Dist.] 1990, writ denied) (deadlines set by trial judge in pretrial order under rule 166 prevail over deadlines in rules of civil procedure). Bomac filed its response to the motion to amend on December 13, alleging prejudice if the late filing was permitted. Bomac argued it would be required to amend its own pleading in response to assert the

discovery rule and to take additional discovery relating to limitations. Bomac alleged the facts underlying the limitations defense were known by American Title before the date for amending pleadings in the pretrial order. American Title replied, contesting the arguments made in Bomac's response, and the trial judge denied leave to amend. American Title argues the trial judge should have permitted the amendment under rules 63 and 66 of the Texas Rules of Civil Procedure.

■ Rule 66 governs trial amendments; rule 63 governs pleading amendments made before trial. *See* Tex. Rs. Civ. P. 63, 66. Under rules 63 and 66, a trial judge has no discretion to refuse an amendment unless the opposing party presents evidence of surprise or prejudice or the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *see also State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.1994) (per curiam) (decision to permit or deny trial amendment under rule 66 rests in sound discretion of trial judge if amendment asserts new cause of action or defense and is thus prejudicial on its face); *Bekins Moving & Storage Co. v. Williams*, 947 S.W.2d 568, 574 (Tex.App.-Texarkana 1997, no pet.) (amendment filed on day of trial to assert defense of limitations introduced new substantive matter; therefore, trial judge did not abuse discretion in refusing it).

American Title argues Bomac should have anticipated limitations would be an issue in the case because (i) a co-defendant who was dismissed from the case pleaded limitations; (ii) it would have been easy for Bomac to have discovered the facts sur-

rounding its cause of action by making a phone call to American Title; (iii) by pleading a cause of action under the DTPA, Bomac was "already charged with knowledge that its claims would be barred if brought more than two years after the date" on which it should have discovered the unconscionable course of action; and (iv) it identified the defense in its supplemental disclosures on November 5. A trial judge, however, may conclude that an amendment would reshape the cause of action, prejudice the opposing party, and unnecessarily delay the trial. *See Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm Dev., Inc.*, 915 S.W.2d 61, 70 (Tex.App.-Corpus Christi 1996, writ denied) (when record shows lack of diligence in bringing reshaped cause before court and where matter pleaded appears to have been known by party seeking to amend and is not based on any newly discovered facts, court does not abuse its discretion by refusing to allow amendment). The trial judge had already granted several continuances of the trial date at American Title's request and over Bomac's objections; therefore, he could have concluded unnecessary delay and prejudice to Bomac would result from granting the amendment. We conclude the trial judge did not abuse his discretion in denying the motion to amend the pleadings. We overrule American Title's sixth issue.

### PLEADING OF SPECIAL DAMAGES

■ American Title contends the damages sought by Bomac are "special damages" that were not pleaded in accordance with the rules of civil procedure. In its third issue, American Title argues Bomac's only evidence of damages consisted of payments made to a third-party lender for reimbursement of that lender's losses after purchasing the loan from Bomac pursuant to a contract of which American Title was unaware. American Title contends rule 56 of the Texas Rules of Civil Procedure required these damages to be specifically stated in Bomac's pleadings. Rule 56 provides, "When items of special damage are claimed, they shall be specifically stated." TEX.R. CIV. P. 56. American Title argues the damages sought by Bomac were consequential damages, not direct damages, and consequential damages are "items of special damage" for purposes of rule 56.

■ In support of its argument, American Title cites *McGuire v. Osage Oil Corp.*, 55 S.W.2d 535 (Tex. Comm'n App.1932, holding approved), and *Longview Construction and Development, Inc. v. Loggins Construction Co.*, 523 S.W.2d 771 (Tex.Civ.App.-Tyler 1975, writ dism'd by agr.). In *McGuire*, as damages for the two defendants' breaches of contract, the plaintiff sought amounts he paid when he had to delay his performance of another contract. *See McGuire*, 55 S.W.2d at 536 (jury awarded costs of renting rig for 43 days, wages of watchman to watch property during delay, and value of McGuire's time during delay). The court held these damages arose out of "special circumstances, different from those which would naturally and properly flow from the breach of such contract," and to recover them, McGuire would be required to establish the defendants knew of the special circumstances. *McGuire*, 55 S.W.2d at 537. These damages did not fit within the general rule

> that damages recoverable for the breach of contract are those that may fairly and reasonably be considered as arising naturally, or according to the usual course of things from the breach of the contract itself, or such damages as may reasonably be supposed to have been in the

contemplation of the parties to the contract at the time it was made, as the probable result of the breach thereof. *McGuire*, 55 S.W.2d at 536. Damages from McGuire's "collateral contract" were not recoverable unless the collateral contract was known to or in contemplation of the parties at the time the parties entered into the suit contract. *McGuire*, 55 S.W.2d at 537.

In *Longview*, a prime contractor sued a subcontractor for breach of contract. The court held the prime contractor could not recover amounts paid to the owner of the property as penalties for delay under the prime contract where the subcontractor had no notice or knowledge of the penalty provisions of the prime contract. *Longview*, 523 S.W.2d at 777–78. The court explained, "[c]ompensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made." *Longview*, 523 S.W.2d at 778. The prime contractor could recover, however, the amounts paid to another subcontractor to complete the work. *Longview*, 523 S.W.2d at 775, 779.

■ Here, the jury awarded Bomac damages from American Title's fraud and violations of the DTPA. The damages "arising naturally" from American Title's conduct would be the amount of the loan Bomac made that was not repaid by the borrower. The fact that Bomac had sold the loan to a third party does not change the characterization of its damages; unlike the facts presented in *McGuire* or *Longview*, Bomac did not seek amounts for delay or damages suffered from the inability to perform another contract. Further, the cases in *McGuire* and *Longview* were breach of contract cases; here, the dam-

ages awarded were for fraud and violations of the DTPA. As noted by the court in *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992), the DTPA allows recovery for actual damages, that is, the total loss sustained by the consumer as a result of the deceptive trade practice. As direct damages, the DTPA permits recovery for loss that is conclusively presumed to have been foreseen or contemplated by the party as a consequence of its breach of contract or wrongful act, under the greater of the "benefit of the bargain" or the "out of pocket" measure. *See Henry S. Miller Co.*, 836 S.W.2d at 163 (Phillips, C.J., concurring).

The loss suffered by Bomac was the amount of the loan not repaid by the borrower. The fact that Bomac paid this amount over to Impac, the purchaser of the loan, under a separate agreement does not transform the amount into special or consequential damages. The unpaid amount of the loan is the direct damage from American Title's actions in violation of the DTPA: the loss "conclusively presumed to have been foreseen or contemplated by the party as a consequence of his breach of contract or wrongful act." *See Henry S. Miller Co.*, 836 S.W.2d at 163 (Phillips, C.J., concurring). Bomac was not required to specifically plead these damages under rule 56. *See* TEX.R. CIV. P. 56.

■ Finally, American Title complains the only evidence of the loss suffered by Bomac was hearsay. The principal of Bomac, Stan Bomar, testified Bomac paid $197,343.82 as a result of the borrower's default on the loan. Bomar's testimony of how much Bomac paid is not hearsay. We overrule American Title's third issue.

### JURY CHARGE

American Title alleges errors in the jury charge. American Title complains of the

definition of "conspiracy" given to the jury. American Title also complains question number 6 improperly commingled multiple theories of liability, including conspiracy and unconscionable conduct. The Texas Supreme Court has held "submitting invalid theories of liability in a single broad-form jury question is harmful error when it cannot be determined whether the jury based its verdict on one or more of the invalid theories." *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 381 (Tex.2000). American Title argues the conspiracy theory of liability was invalid because there was no evidence of one or more of its essential elements and it is impossible to determine whether the jury based its answer to question 6 on a conspiracy finding or on a finding American Title acted unconscionably.

■ The elements of a civil conspiracy include two or more persons, an object to be accomplished, a meeting of the minds on the object or course of action, one or more unlawful, overt acts, and damages as a proximate result. *See Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex.2005). American Title complains the trial court's instruction does not properly define the specific intent required for a conspiracy. *See Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex.1996) (merely proving joint intent to engage in conduct that resulted in injury not sufficient; civil conspiracy requires specific intent to agree to accomplish unlawful purpose or to accomplish lawful purpose by unlawful means). The trial court's instruction includes all of the elements of a civil conspiracy as set forth by the Texas Supreme Court including the specific intent described in *Juhl.* The trial court did not err in refusing American Title's proffered instruction.

Further, the trial judge did not submit an invalid theory of liability. As discussed in more detail below, there was some evidence from which the jury could have concluded American Title conspired with Caldwell or Norris to engage in unconscionable conduct that was a producing cause of damage to Bomac.

American Title also complains the charge improperly submitted unpled special damages and damages for which there was no evidence. Because we previously addressed these arguments in our discussion of American Title's third issue, we decline to revisit them here. We overrule American Title's fourth issue.

### BIFURCATION

■ In its fifth issue, American Title complains the trial judge erred in submitting the question of additional damages under the DTPA to the jury in a separate bifurcated proceeding. American Title moved for a bifurcated trial, but now complains its motion pertained only to Bomac's claims for fraud and breach of fiduciary duty, not additional damages under the DTPA. American Title complains submission of DTPA additional damages in a bifurcated proceeding violates Chapter 41 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.002(d)(2) (Vernon Supp.2005) (chapter does not apply to action brought under DTPA).

American Title's motion expressly requested "a bifurcated trial on the issue of exemplary damages" and stated the motion was made pursuant to section 41.009 of the Texas Civil Practice and Remedies Code. Section 41.009 states the trial court "shall provide" a bifurcated trial upon timely motion by the defendant. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.009(a) (Vernon 1997). As there were claims to

which Chapter 41 applied, the trial judge did not have discretion to deny the motion to bifurcate or refuse to have the jury determine the liability for exemplary damages in the first phase of the trial and the amount of exemplary damages in the second. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.009(c), (d).

While it is true Chapter 41 excludes DTPA claims from its coverage, we do not agree this required the trial judge to submit the amount of additional damages under the DTPA to the jury in the first phase of the trial. TEX. CIV. PRAC. & REM. CODE ANN. § 41.002(b). Chapter 41 establishes standards and procedures for recovery of punitive damages and "establishes the maximum damages that may be awarded in an action subject to this chapter." *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 41.002(b), 41.003 (Vernon Supp.2005) (standards for recovery of exemplary damages). That the DTPA has its own standards and procedures for recovery of damages does not make bifurcation error in a trial where bifurcation was mandatory under Chapter 41 on other issues.

■ When the jury found a knowing violation of the DTPA, it was proper to submit a question to the jury on the amount of additional damages. *See* TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.2005) (if trier of fact finds defendant's conduct committed knowingly, trier of fact may award not more than three times amount of economic damages). Additional damages under the DTPA are punitive damages. *See PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 89 (Tex.2004). It was not an abuse of discretion to submit the additional damages question in the second phase of the trial where bifurcation was required at the outset of the first phase.

*See Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 30 (Tex.1994) (bifurcation of trial in punitive damages cases required).

■ In addition, a trial judge may order a separate trial of any claim. *See* TEX.R. CIV. P. 174(b). On appeal, we will not disturb the trial judge's decision to grant a severance unless the trial judge abused his discretion. *Guar. Fed. Sav. Bank v. Horseshoe Oper. Co.,* 793 S.W.2d 652, 658 (Tex.1990). American Title cites to no provision of the DTPA requiring the amount of additional damages to be determined in the first phase of a properly bifurcated trial or to any case that so holds. We overrule American Title's fifth issue.

### SUFFICIENCY OF THE EVIDENCE

American Title challenges the legal sufficiency of the evidence to support the jury's verdict regarding unconscionability, causation, damages, and conspiracy. Bomac offered testimony from its witnesses that the closing documents were altered so that the nature of the transaction was concealed; the HUD–1 form was changed and Lee's personal rent payment was made out of the loan proceeds; Bomac would not have loaned the money to Norris had it known of the true circumstances of the transaction; the closing documents erroneously showed Norris had made a downpayment; American Title did not follow Bomac's instructions to notify it of a simultaneous transaction; the proceeds of Bomac's loan were used to facilitate two conveyances of the property; and both Lee and Caldwell participated in facilitating the two transactions so that it would not be apparent to Bomac that two sales took place on the same day with the proceeds of the loan to Norris. In short, there was ample evidence American Title,

acting together with Caldwell, obtained Bomac's funds by concealing the true nature of the transaction.

The jury found American Title's conduct to be unconscionable. An "unconscionable action or course of action" under the DTPA is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM.CODE ANN. § 17.45 (Vernon 2002). In *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex.1985), the court stated "a consumer need only prove that he was taken advantage of to a grossly unfair degree." This should be "determined by examining the entire transaction and not by inquiring whether the defendant intended to take advantage of the consumer or acted with knowledge or conscious indifference." *Chastain*, 700 S.W.2d at 583. In discussing the meaning of the phrase, "grossly unfair degree," the court concluded a consumer must show "the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Chastain*, 700 S.W.2d at 584. The DTPA also provides its provisions should be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against ... unconscionable actions." *See* TEX. BUS. & COM.CODE ANN. § 17.44 (Vernon 2002).

American Title argues Bomac "simply knew too much to have been taken grossly unfair advantage of." American Title argues Bomac should have better worded its closing instructions and determined from the closing documents the truth regarding the land flip and realized that Caldwell was both the broker and the seller. American Title also argues Griffin did not actually rely on the altered title commitment and had before her at closing the altered HUD–1 form showing payment to "Kensington" (later determined to be Lee's landlord). Bomac also urges the evidence is inconclusive that Bomac's funds were used to finance both transactions or that Caldwell made Norris's down payment. Citing *Peltier Enterprises, Inc. v. Hilton*, 51 S.W.3d 616, 624 (Tex.App.-Tyler 2000, pet. denied), American Title concludes Bomac's experience with the type of transaction at issue precludes a finding of unconscionable conduct.

*Peltier*, however, is distinguishable. There, the court was determining whether common issues predominated for purposes of a class action suit by car buyers against dealerships and banks regarding financing. *See Peltier*, 51 S.W.3d at 623. In its discussion of the unconscionability claim, the court noted individualized proof might be required regarding the customer's experience: "[a] plaintiff with knowledge about indirect lending or with years of experience in the car-selling business would not be able to show that Peltier did anything that was 'unconscionable.' " *Peltier*, 51 S.W.3d at 624. In *Ketter v. ESC Medical Systems, Inc.*, 169 S.W.3d 791, 801 (Tex. App.-Dallas 2005, no pet.), however, we rejected the notion that a consumer's experience or knowledge would always preclude a claim for unconscionable conduct. *See Ketter*, 169 S.W.3d at 801 ("We decline to hold that an unconscionable action or course of action cannot be practiced upon an experienced physician."). The jury found American Title defrauded Bomac. That Bomac, despite its experience, was not able to discover the altered title commitment, the re-directed closing payment, the type of transaction, and the source of the funds for the flip does not change the nature of American Title's conduct. There

was evidence from which the jury could have determined it was unfair to Bomac to obtain its funds by concealing the nature of the transaction and that "the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *See Chastain,* 700 S.W.2d at 584.

 As to conspiracy, American Title further argues there was at most proof of joint conduct of inducing Bomac to make the Norris loan, not proof of an agreement between American Title, Caldwell, Norris, or anyone else to take advantage of Bomac to a grossly unfair degree. Conspiracy may be established by circumstantial evidence. *See Lesikar v. Rappeport,* 33 S.W.3d 282, 302 (Tex.App.-Texarkana 2000, pet. denied). While it is true there was no direct evidence Lee, Caldwell, and Norris got together and agreed to take advantage of Bomac, Bomac introduced evidence Lee was fully aware of the nature of the transaction, assisted Caldwell with the documentation of the two sales, at least passed along, if not created, altered documents concealing the nature of the transaction, and accepted payment of her rent from the closing proceeds. From this evidence, a reasonable jury could have concluded two or more persons had specific intent to agree to accomplish an unlawful purpose or a lawful purpose by unlawful means. *See Juhl,* 936 S.W.2d at 644.

 American Title also challenges the sufficiency of the evidence of causation and damages. Bomac was required to prove American Title's conduct was a producing cause of its damages, that is, a substantial factor that brought about the injury and without which the injury would not have occurred. *See Prudential Ins. Co. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). American Title argues Bomac

knew Norris had no money for a downpayment but proceeded with the transaction regardless; therefore, any damage was the result of Norris's conduct or Bomac's, not American Title's. However, the evidence showed American Title supplied Bomac with documents showing the downpayment had been made by Norris, and there was evidence Bomac would not have made the loan if it had known the true nature of the transaction. Further, as noted above, there was non-hearsay evidence presented to the jury of Bomac's damages. We conclude the evidence is legally sufficient to support the jury's verdict.

American Title briefly argues in the alternative that the evidence was factually insufficient to support the jury's verdict. We have reviewed the record in its entirety and considered all of the evidence. In light of the evidence detailed above, the jury's findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain,* 709 S.W.2d at 176. We overrule Bomac's first issue.

We affirm the judgment of the trial court.